670 So.2d 816 (1995)
Willie RUSSELL
v.
STATE of Mississippi.
No. 93-DP-00418-SCT.
Supreme Court of Mississippi.
December 7, 1995.
Rehearing Denied April 11, 1996.
*818 W.S. Stuckey, Jr., Stuckey & Stuckey, Greenwood, Whitman D. Mounger, Greenwood, for Appellant.
Michael C. Moore, Attorney General, Jackson, Marvin L. White, Jr., Assistant Attorney General, Jackson, for Appellee.
En Banc.
*819 DAN M. LEE, Chief Justice, for the Court:
Willie Russell ("Russell") was convicted of the capital murder of Argentra Cotton ("Cotton"), a Mississippi Department of Corrections Officer, on October 4, 1990, and sentenced to death by the same jury on October 5, 1990. On appeal to this Court, Russell's murder conviction was affirmed, but his death sentence was vacated and the case was remanded for resentencing. Russell v. State, 607 So.2d 1107 (Miss. 1992). In March of 1993, after receiving a second sentencing hearing, a second jury once again sentenced Russell to death for Cotton's murder. Russell, aggrieved by this second jury's death sentence assigns as error the following:
I. THE TRIAL COURT ERRED IN GRANTING THE STATE'S CHALLENGE FOR CAUSE OF CHARLES BUTTS WHO SAID HE COULD VOTE FOR THE DEATH PENALTY.
II. THE TRIAL COURT ERRED IN FAILING TO EXCUSE PROSPECTIVE JUROR BOND WHO STATED THAT AT THE BEGINNING OF THE TRIAL HE WOULD BE LEANING TOWARD A DEATH SENTENCE.
III. THE COURT ERRED IN COERCING A VERDICT FROM THE JURY WHICH HAD RETURNED A DEFECTIVE VERDICT.
IV. THE TRIAL COURT'S COMMENTS TO THE JURY CONCERNING THE LENGTH OF DELIBERATIONS WAS UNDULY COERCIVE.
V. THE TRIAL COURT ERRED IN ALLOWING THE PREVIOUS TESTIMONY OF WITNESSES SMITH, WOMBER, AND HAWKINS TO BE READ TO THE JURY.
VI. THE TRIAL COURT ERRED IN ALLOWING EVIDENCE BEYOND THE ACTUAL CONVICTION TO BE ADMITTED TO PROVE THE PRIOR CONVICTIONS.
VII. THE TRIAL COURT ERRED IN PERMITTING PROOF OF A PRIOR ESCAPE WHERE IT WAS NOT PROVED THAT SUCH WAS A PRIOR CRIME OF VIOLENCE.
VIII. IT WAS ERROR FOR THE TRIAL COURT TO MODIFY ITS RULING PROHIBITING THE STATE FROM INTRODUCING EVIDENCE OTHER THAN THAT RELATING TO THE TWO AGGRAVATING CIRCUMSTANCES.
IX. IT WAS ERROR FOR THE TRIAL COURT TO PERMIT THE PROSECUTION TO PUT INTO EVIDENCE MATTERS BEYOND THE SCOPE OF THE TWO AGGRAVATING CIRCUMSTANCES.
X. THE TRIAL COURT ERRED IN NOT GRANTING A MISTRIAL AFTER THE PROSECUTION FLOUTED THE TRIAL COURT'S EARLIER RULING AND COMMENTED ON THE DEFENDANT'S FAILURE TO TESTIFY.
XI. THE TRIAL COURT ERRED IN ALLOWING THE STATE'S EXPERTS TO EXPRESS THEIR LEGAL OPINION THAT RUSSELL'S MENTAL DISORDER WAS AN INSUFFICIENT LEGAL EXCUSE FOR THE JURY TO FIND IT TO BE A MITIGATING FACTOR JUSTIFYING THE IMPOSITION OF A LIFE SENTENCE.
XII. THE COURT ERRED IN HOLDING THAT A MITIGATION WITNESS' TESTIMONY TO THE EFFECT THAT WILLIE RUSSELL WOULD NEVER KILL AGAIN OPENED THE DOOR TO THE PROSECUTION'S PROVING FUTURE DANGEROUSNESS.
XIII. IT WAS ERROR FOR THE TRIAL COURT TO INSTRUCT THE JURY THAT THEY "MAY CONSIDER THE DETAILED CIRCUMSTANCES OF THE OFFENSE FOR WHICH THE DEFENDANT WAS CONVICTED."
*820 XIV. THE SENTENCING VERDICT INSTRUCTION WAS DEFECTIVE IN A MANNER WHICH VIOLATES STATE LAW AND THE EIGHTH AMENDMENT.
XV. THE DEATH SENTENCE SHOULD BE REVERSED DUE TO THE ACCUMULATION OF ERROR THAT OCCURRED AT SENTENCING.

STATEMENT OF THE FACTS
On July 18, 1989, while an inmate at the State Penitentiary in Parchman, Russell removed the 16" by 10" bottom air vent in his cell door, crawled through the space, and managed to secrete himself behind the stairwell pillar on the lower level of the unit in which he was housed. Russell, armed with a "shank," (homemade knife) waited in ambush for Corrections Officer Cotton. Russell's patience was rewarded at approximately 6:50 p.m. when Officer Cotton entered Zone 3 in which Russell was hiding. Cotton, unaware of Russell's presence, attempted to lock the door between Zone 2 and Zone 3. While Cotton's back was turned, Russell rushed Cotton and proceeded to stab him with the shank.
Officer Cotton, surprised by Russell's attack, attempted to escape by using a plastic food tray to repulse Russell's assault. Nonetheless, Russell followed Cotton, stabbed him in the back, and then held Cotton down with his knee and continued to stab him. During the attack, Russell's attention was momentarily drawn away by another guard allowing Cotton the opportunity to retreat into the guard control tower. Upon reaching the safety of the guard tower, Officer Cotton called for and received medical help. Cotton was first taken to the Parchman emergency room and subsequently transferred to the Bolivar County Hospital where he died as a result of internal bleeding. Russell, 607 So.2d at 1109-10.
Subsequently, Russell was indicted and convicted for killing a peace officer acting in his official capacity as a Correctional Officer of the Mississippi State Penitentiary in violation of Miss. Code Ann. § 97-3-19(2)(a). At trial, Russell took the stand and testified that he stabbed Officer Cotton because Cotton had taken twenty dollars from him in order to buy yeast for Russell. Evidently, Russell was going to use the yeast to make an alcoholic drink. However, according to Russell's testimony, Cotton never delivered the yeast, nor did he return Russell's twenty dollars.
The jury, after hearing overwhelming evidence as to Russell's guilt, returned a guilty verdict. After finding Russell guilty of capital murder, the jury sentenced Russell to death. On appeal, this Court affirmed the jury's determination of Russell's guilt, but reversed his death sentence as Russell, indicted as a habitual offender, was not allowed a habitual offender hearing before the penalty phase of his trial. See Turner v. State, 573 So.2d 657 (Miss. 1990).
On Russell's resentencing, the venire and subsequent sentencing jury were drawn from Montgomery County Mississippi. However, for security reasons and the ease and convenience of transporting witnesses into court from Parchman, the trial was held in Sunflower County.
The second jury, after hearing evidence of the murder and all of the evidence that would tend to establish mitigating factors and aggravating factors, sentenced Russell to death. Specifically, the jury found the following aggravating factors: (1) The capital offense was committed by a person under a sentence of imprisonment; and (2) The Defendant was previously convicted of another capital offense or of a felony involving the use or threat of violence to the person. Likewise, the jury found that there were "insufficient mitigating circumstance [sic] to outweigh the aggravating circumstance(s)."

DISCUSSION

I. THE TRIAL COURT ERRED IN GRANTING THE STATE'S CHALLENGE FOR CAUSE OF CHARLES BUTTS WHO SAID HE COULD VOTE FOR THE DEATH PENALTY.
During death qualification of Russell's capital murder resentencing jury, the trial judge excused veniremember Charles Butts ("Butts") for cause. Russell contends that *821 Butts was eligible to serve on his jury under Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and that the trial judge erroneously struck Butts. On appeal, Russell contends that the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and the United States Supreme Court's opinion in Gray v. Mississippi, 481 U.S. 648, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987), dictates the reversal of his death sentence.
In the case at bar, the jury selection began with a 186-person venire. During the initial proceedings, the trial judge excused those veniremembers who were ill or those who had to take care of sick family members. Next, the trial judge excused those members of the venire over the age of sixty-five who chose to exercise their statutory right not to serve on the jury. See Miss. Code Ann. §§ 13-5-23 and 13-5-25. The venire list also indicates that there were some veniremembers who either lived out of the county or out of the state, or the authorities were unable to locate. Ultimately, 77 veniremembers were excused during these initial proceedings.
Next, the trial judge sought to determine if any of the remaining veniremembers were not qualified to serve on Russell's jury, i.e., veniremember not a registered voter or landowner in Montgomery County, veniremember previously convicted of a felony, veniremember not twenty-one years of age, veniremember a common gambler or habitual drunk, veniremember convicted of unlawful sale of intoxicating beverages within five years and, veniremember with a case pending in Sunflower County Circuit Court at time of Russell's resentencing. Through this process six veniremembers were disqualified from jury service.
The trial judge proceeded to determine whether any of the remaining veniremembers chose to claim an exemption from jury duty as provided by Mississippi law. Four additional veniremembers chose not to serve because of exemptions, i.e., three were over sixty-five and one was the sole proprietor of a business that could not afford to be closed for several days.
Veniremembers were next asked to present any personal excuses they might have for not serving on Russell's jury. After hearing all of the reasons proffered, the trial judge excused eight veniremembers. Out of the 186 people called for Russell's venire, 95 were excused for various statutory and personal reasons and 91 were left for jury qualification.
The trial judge began the actual voir dire process by asking the veniremembers various general questions about the case and its participants. The veniremembers were then tendered to the State and then to Russell. At this time, none of the jurors were questioned as to their views regarding the death penalty. However, some veniremembers, of their own volition, did offer their views on capital punishment. After both sides had asked their questions, the veniremembers were allowed to leave the courtroom so that the parties could request certain excusals for cause. Eight of the State's requests were granted and nine of Russell's were granted. Also, at this time it was determined that one veniremember, Nannie Butts, was over sixty-five and had chosen not to serve. The court also noted that one veniremember had not appeared and had not given an excuse. Seventy-two people were left as veniremembers at this point.
Both parties were then allowed to individually voir dire veniremembers who had informed the court that they had family members who had either been accused of, or convicted of, a crime. One veniremember was excused for cause as a result of this questioning.
The remaining seventy-one veniremembers were placed into panels of twelve and tendered for death qualification. The first three panels of twelve were questioned and eight veniremembers from these three panels were excused for cause. At this point there were twenty-eight veniremembers from which jurors would be selected. The fourth panel, on which Butts was seated, was called to insure that there would be thirty-six veniremembers for jury selection. After the fourth panel was called and examined, the trial judge excused the following veniremembers for *822 cause: Paul A. Cummings; Hattie Mae Hopkins; Charles Butts and; Joe Garrett.
The first panel of twelve jurors was provisionally seated and the parties exercised their peremptory challenges alternately beginning with the State. The State used three peremptory strikes and then accepted the first three provisional jurors from the second panel and tendered the twelve provisional jurors to the defense. The defense accepted ten of the twelve tendered jurors and used two of its peremptory strikes to remove provisional jurors number 1 and 8. The prosecution used its fourth and fifth peremptory strikes to remove provisional jurors 16 and 17 and tendered the twelve provisional jurors to the defense. Russell then used his third peremptory strike to remove provisional juror number 18. Both the State and Russell accepted provisional jurors 19 and 20. This completed the process of selecting the twelve jurors.
Next, two alternates were selected. During this process both parties exercised one of their two peremptories and selected provisional jurors number 21 and 24 to serve as alternates for Russell's resentencing. See Miss. Code Ann. § 13-5-67.

A.
On appeal, Russell relies solely upon Gray v. Mississippi, 481 U.S. 648, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987), to support his contention that his death sentence be vacated. In fact, Russell argues that the case sub judice is indistinguishable from Gray.
To properly address this assignment of error, we must first determine whether the trial judge incorrectly excluded Butts under Witherspoon, supra, and its progeny. This Court notes that the trial judge's determination of Butts' bias as to the death penalty is a question of fact that is entitled to deference upon judicial review. Wainwright v. Witt, 469 U.S. 412, 429, 105 S.Ct. 844, 855, 83 L.Ed.2d 841 (1985); Ruiz v. Norris, 868 F. Supp. 1471, 1551 (E.D.Ark. 1994); C.f., Cabello v. State, 490 So.2d 852, 856 (Miss. 1986) (trial judge's finding of fact that waiver of Miranda rights voluntarily given accorded deference upon judicial review). In this case, there were three veniremembers with the surname "Butts" and one veniremember with the surname "Burt." Charles Butts and Tony Burt were on the fourth jury panel and the record reveals that Butts was veniremember number 68 and Burt was veniremember 69. Upon reviewing the questioning of the fourth panel we are not convinced that the trial judge erroneously struck Butts for cause.[1]
During questioning by the trial judge and prosecution, both Butts and Burt expressed the unequivocal opinion that they could not impose the death penalty under any circumstances. However, during Russell's attempt to rehabilitate the veniremembers the following exchange was had between Russell's attorney and Butts and Burt:
... .
Q. What would your answer be? Regardless of the killing; I don't care how bad it could possibly get; regardless of the killing, would you never impose the death penalty?
BY MR. BURT: I don't think I could.
Q. Are you unsure or are you positive that you could never impose the death penalty?
A. I don't think I ever could.
Q. Never could. And you are?
A. Burt.
Q. Burt. Could you under no circumstances vote for the death penalty?
A. No, sir.
Q. Doesn't make any difference how bad the killing was, you could never vote for the death penalty?
BY MR. BUTTS: You said no matter how bad it was?

*823 Q. Yes.
A. According to how bad it was, I believe I could.
Q. Okay. So, in your mind it would be a question of just how bad the crime was. If it wasn't so bad, you might vote death. Is that correct?
A. Yeah.
Q. Okay. So, you could impose the death penalty if you thought the evidence in this case warranted it, is that correct?
A. Right.
Q. Okay, and you could do that, couldn't you?
A. Right.
Q. Okay, and you could do that, couldn't you
A. Right.
(Vol. 4, pp. 280-81).
Later, when the State and Russell challenged fourth panel members for cause, the following exchange occurred:
BY THE COURT: Any challenges for cause on this panel?
BY MRS. BRIDGES: Yes, sir. Hattie Mae Hopkins. She indicated that she could not vote for the death penalty under any circumstances.
BY THE COURT: What number is she?
BY MRS. BRIDGES: She's on the top of the page on the right side?
BY SHERIFF TOMPKINS: 65.
BY THE COURT: Okay.
BY MRS. BRIDGES: Was that challenge granted?
BY THE COURT: Uh-huh.
BY MRS. BRIDGES: Charles Butts, who indicated likewise.
BY MR. STUCKEY: Objection. I believe that he was rehabilitated. He indicated that he could, in fact, impose the death penalty.
BY THE COURT: Mr. Butts said he never could. I will grant the challenge.

BY MRS. BRIDGES: Your Honor, I would also challenge Tony Burt, who answered my question that regardless of what I proved, under no circumstances would he vote for the death penalty. And Counsel asked him just under an extreme [sic] horrible murder, could he vote for a death sentence, and Counsel has objected to the State proving heinous, atrocious, and cruel circumstances as an aggravating circumstance. Taking that out, this juror has stated that he could not under any circumstances in this case vote for the death penalty.

BY MR. STUCKEY: To which the Defendant would object, Your Honor. I think that in his mind, and I asked him this, was it a matter of degree on how bad the crime was, and he said, yes, it was; that's what it depended on. I think it's what everybody makes their decision on.

BY THE COURT: He said it depends on how bad it was. I think that rehabilitates him. I'm not going to grant that challenge.

... .
(Vol. 4, pp. 288-89).
In reviewing the record as a whole to determine whether the trial judge correctly excluded Butts for cause, we are led to the conclusion that the court reporter mistakenly transposed the names of Butts and Burt during Russell's voir. Wainwright v. Witt, 469 U.S. at 431, 105 S.Ct. at 856 (finding of trial judge court presumed correct unless finding of bias is not fairly supported by the record viewed as a whole). This conclusion is made clear when we examine the grounds offered by the State (Mrs. Bridges) for striking Butts and Burt for cause and when we examine the reasons given by Russell (Mr. Stuckey) to the trial court as to why the two are not excludable for cause.
For example, the transcript of Russell's voir dire of Burt clearly indicates that "Burt" would never impose the death penalty (Vol. 4, p. 280). However, when we look to the attorneys' argument as to why Burt should not be excluded for cause (Vol. 4, pp. 288-89), we find that the State was concerned that the only time Burt could impose the death penalty was if the murder was an extreme and horrible murder, i.e., especially atrocious, heinous or cruel. Burt's response concerned the State because earlier the trial judge had ruled that the State could not attempt to *824 prove the especially atrocious, heinous or cruel aggravator in the case sub judice. See Miss. Code Ann. § 99-19-101(5)(h). To rebut the State's attempt to have Burt excused for cause, Russell argued that Burt should not be excluded because he indicated that he would impose the death penalty if the murder was bad enough. The trial judge concurred with Russell's assessment of Burt's voir dire responses and emphatically stated that Burt would impose the death penalty if the murder was bad enough.
On the other hand, the testimony attributed to "Butts" indicates that Butts would impose the death penalty if the circumstances of the murder were bad enough. (Vol. 4, pp. 280-81). When arguing for Butts' excusal, the prosecution argued that Butts would never impose the death penalty. Russell countered and said that Butts indicated that he would indeed impose the death penalty. (Vol. 4, p. 288). During this argument, Russell did not indicate that Butts would impose the death penalty if the circumstances warranted it. The trial judge agreed with the prosecution and struck Butts.
The problem is plain; Russell's voir dire of "Burt" indicates that "Burt" would never impose the death penalty and Russell's voir dire of "Butts" indicates that "Butts" would impose the death penalty if the circumstances were bad enough. This is directly contrary to what the parties argued when the State challenged Butts and Burt for cause. Because Russell's attorney failed to differentiate between Butts and Burt, as he did with Garrett, Anderson and Hopkins, we are led to the conclusion that the court reporter mistakenly labeled Butts' responses as those of Burt and labeled Burt's responses to Russell's questioning as those of Butts. Therefore, upon reviewing the record as a whole, we find that the trial judge did not err in concluding that Butts would never impose the death penalty and that Burt could impose the death penalty if the circumstances warranted such a penalty. See M.R.A.P. 14(a). Accordingly, given that the trial judge's finding of bias is accorded great deference on judicial review, Witt, 469 U.S. at 429, 105 S.Ct. at 855, we conclude that the trial did not err in excluding Butts for cause.

B.
Even if we were to find that Butts was erroneously stricken for cause, we find that Gray, supra, is distinguishable from the case sub judice. In Gray, the prosecution was forced to use several of its peremptory challenges to remove jurors who should have been excused for cause under Witherspoon. Gray, 481 U.S. at 669, 107 S.Ct. at 2057. After the State had used all of its peremptory strikes, prospective juror, Mrs. H.C. Bounds, stated that although she was against the death penalty, she could, in appropriate circumstances vote for the death penalty. The State, confronted with the absolute certainty of having Bounds as a juror, sought the restoration of a peremptory challenge so that it could remove Bounds. The trial judge realized his earlier errors and attempted to remedy these mistakes by striking Bounds for cause. Ultimately, the jury sentenced Gray to death and the United States Supreme Court, in a plurality opinion, reversed Gray's death sentence. Gray v. Mississippi, 481 U.S. 648, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987).
In the term following the Gray decision, the United States Supreme Court decided yet another case dealing with a capital murder defendant's Sixth and Fourteenth Amendment Right to a fair and impartial jury. Ross v. Oklahoma, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). In Ross, the defendant sought the removal for cause of a veniremember who should have been excused under Witherspoon. The trial judge refused to strike the veniremember for cause and Ross was forced to use a peremptory strike to keep the veniremember off the jury. Ross, 487 U.S. at 84, 108 S.Ct. at 2276. Ultimately, Ross was convicted of capital murder and sentenced to death. Ross appealed and argued that Gray v. Mississippi, 481 U.S. 648, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987), mandated the reversal of his death sentence because he was denied an impartial jury.
On appeal, the Petitioner argued "that had he not used his sixth peremptory challenge *825 to remove Huling, he could have removed another juror, including one who ultimately sat on the jury." Ross also argued that "had he used his sixth peremptory challenge differently, the prosecution may have exercised its remaining peremptory challenges differently in response, and consequently, the composition of the jury panel might have changed significantly." Ross, 487 U.S. at 87, 108 S.Ct. at 2277-78.
While the Ross Court agreed with the Petitioner's contention that the failure to remove Huling may have resulted in a jury panel different from that which would otherwise have decided the case, the Court rejected the petitioner's argument that Gray mandated reversal of his death sentence and stated:
We decline to extend the rule of Gray beyond its context: the erroneous "Witherspoon exclusion" of a qualified juror in a capital case. We think the broad language used by the Gray Court is too sweeping to be applied literally, and is best understood in the context of the facts there involved. In the instant case, there is no need to speculate whether Huling would have been removed absent the erroneous ruling by the trial court; Huling was in fact removed and did not sit.
Ross, 487 U.S. at 87-88, 108 S.Ct. at 2278 (internal citations omitted).
We think it clear that the United States Supreme Court, in Ross, limited the holding of Gray to "the context of the facts there involved," i.e., erroneous Witherspoon exclusions where the veniremember would have served on the defendant's jury but for the trial judge's erroneous exclusion.
In Gray, the erroneously excluded veniremember, Mrs. H.C. Bounds, undoubtedly would have served on the jury had it not been for the trial judge's error. In the case sub judice, we cannot say that Butts would have served on Russell's jury and therein lies the difference between the case at bar and Gray v. Mississippi, 481 U.S. 648, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987).
After reviewing the record, it is clear to this Court that the jury and the two alternates in this case were selected from the first twenty-four jury panel members and no jury panel member from the fourth panel in which Charles Butts had been a member was reached.[2] Butts would have been panel member number 35 if he had not been excused for cause. Even if the defense had chosen to use all twelve of its peremptory challenges, the prosecution would have had to oblige the defense and use at least 11 of its peremptory challenges to enable Butts to serve on the jury. We think it far too speculative to assume that the defense would have used all twelve of its peremptory challenges and that the State would have then used at least eleven of their challenges to allow Russell to reach Butts. This is especially so in light of Butts' conflicting statements as to whether he could impose the death penalty.
The Sixth and Fourteenth Amendments of the United States Constitution guarantee a defendant on trial for his life the right to an impartial jury. Ross, 487 U.S. at 81, 108 S.Ct. at 2277; Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). We find that Russell was afforded such a jury. Upon examination of the record, we note that none of the twelve jurors were challenged for cause and likewise, on appeal, Russell does not allege that any of the twelve were not impartial. Accordingly, we conclude that Russell's right to an impartial jury was not abridged.

II. THE TRIAL COURT ERRED IN FAILING TO EXCUSE PROSPECTIVE JUROR BOND WHO STATED THAT AT THE BEGINNING OF THE TRIAL HE WOULD BE LEANING TOWARD A DEATH SENTENCE.
Russell contends that the trial judge committed reversible error when he refused to strike prospective juror Donald Bond for cause. Russell suggests that Bond would always vote for the death penalty and therefore, *826 he should have been excluded under Morgan v. Illinois, 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992).
Notwithstanding Russell's argument, it is noted that this assignment is without support in the record. During voir dire Bond did not indicate that he would automatically impose the death sentence. In fact, Bond indicated that he would not lean toward one sentence or another. Accordingly, the record simply does not support Russell's contention that Bond would automatically vote for the death penalty.
Assuming arguendo, that Bond should have been stricken for cause under Morgan, supra; Witt, supra; Witherspoon, supra, we hold that this assignment of error is without merit. The record clearly indicates that Bond did not serve on Russell's jury. In fact, the record indicates that the jury and the two alternates were selected before Bond's name was reached. Russell used three of his twelve peremptories to impanel the jury and was never confronted with choosing Bond as a juror.
In Ross v. Oklahoma, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988), the United States Supreme Court held that a defendant's Sixth and Fourteenth Amendment right to an impartial jury was not abridged where a prospective juror who should have been excluded under Witherspoon, supra, was not excused for cause and consequently, the defendant was forced to use a peremptory strike to keep the prospective juror off the panel. In the case sub judice, Russell was never confronted with the choice of using a peremptory strike on Bond because the jury was impaneled before Bond's name was reached. See also Mettetal v. State, 602 So.2d 864 (Miss. 1992) (prerequisite to presentation of a claim of a denial of constitutional rights due to denial of a challenge for cause is showing that the defendant had exhausted all of his peremptory challenges and that the incompetent juror(s) was forced to sit on the jury by the trial court's erroneous ruling).
Donald Bond did not serve on Russell's jury panel, nor in fact was Russell forced to use a peremptory strike to keep Bond off the jury panel. Therefore, Russell cannot satisfy the prerequisite for the presentation of a claim of a denial of his constitutional right to an impartial jury. Mettetal, 602 So.2d 864, 869 (Miss. 1992). Therefore, we find that this assignment of error is without merit.

III. THE COURT ERRED IN COERCING A VERDICT FROM THE JURY WHICH HAD RETURNED A DEFECTIVE VERDICT.
Russell argues in this assignment of error that the trial judge coerced the jury into amending their verdict to show that they found the two aggravators beyond a reasonable doubt. The thrust of Russell's appeal appears to be that the jury's written verdict should have stated that they found the two aggravators "beyond a reasonable doubt." Russell argues that the trial judge's question as to whether the jury found the two aggravators beyond a reasonable doubt constituted impermissible coercion. This "coercion," Russell argues, merits reversal of his death sentence. Notwithstanding Russell's argument, we note that Russell failed to lodge a contemporaneous objection at trial to this alleged error. This Court will not address errors on appeal where the defendant failed to raise a contemporaneous objection at trial. Therefore, we find that Russell is procedurally barred from raising this issue on appeal. Foster v. State, 639 So.2d 1263 (Miss. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1365, 131 L.Ed.2d 221 (1995).

IV. THE TRIAL COURT'S COMMENTS TO THE JURY CONCERNING THE LENGTH OF DELIBERATIONS WAS UNDULY COERCIVE.
After the close of all evidence, the trial judge instructed the jury in part:
All right, Ladies and Gentlemen, you've now heard everything there is to hear about this case. It's time for you to retire to your jury room with an end of trying to reach a sentence if you can do so without violence to your individual judgment. You will be given the instructions that have been offered and received. You'll be given the Court's instructions and the long instruction concerning how the sentence should be [sic] will be S-1, which is at the *827 end of the stack of instructions. You will be given a pad on which to write your sentence should you reach one. If you reach a sentence, follow the guidelines in S-1, have your foreman sign the sentence if it is death, knock on the door and tell the Bailiffs that you have reached a verdict-a sentence, and the Bailiff will notify us. You should have some food arriving in about thirty minutes. The Clerk has called the Clerk's office in Winona to tell them that you will be home sometime this evening and had them call your families. So, that has been taken care of. With that said, Mr. Pace, if you would keep your seat, the rest of you will retire to the jury room.
Russell contends that these comments were unduly coercive and therefore, his death sentence must be set aside.
The State argues that Russell did not lodge a contemporaneous objection to the trial judge's comment to the jury. Thus, the State argues, Russell is procedurally barred from raising this issue on appeal. Foster, supra; Chase v. State, 645 So.2d 829, 850 (Miss. 1994). Upon careful review of the record, we note that Russell did not object at trial to the above comments. Accordingly, we hold that Russell is procedurally barred from raising this issue on appeal. Foster, supra.

V. THE TRIAL COURT ERRED IN ALLOWING THE PREVIOUS TESTIMONY OF WITNESSES SMITH, WOMBER, AND HAWKINS TO BE READ TO THE JURY.
Russell argues that the trial judge erred in allowing the State to introduce a transcript of three witnesses' testimony from the guilt phase of his trial when the prosecution failed to take the steps necessary under Mitchell v. State, 572 So.2d 865 (Miss. 1990), to obtain the "unavailable" witnesses' attendance at his trial. This error, Russell contends, warrants the reversal of his death sentence.
In the case at bar, the trial judge found, for purposes of Miss.R.Evid. 804, that A.J. Smith, Christopher Womber and Willie Hawkins were unavailable to testify and therefore, the trio's sworn testimony from the guilt phase could be used to show that Russell killed Cotton. Miss.R.Evid. 804(a) provides in pertinent part:
(a) Definition of Unavailability. "Unavailability as a witness" includes situations in which the declarant:
... .
(4) Is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or
(5) Is absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means;...
In order to use the witnesses' former testimony, the prosecution must prove the unavailability of the witness(es) by diligent effort. Mitchell v. State, 572 So.2d 865 (Miss. 1990) (citing Stoop v. State, 531 So.2d 1215, 1220 (Miss. 1988)). The trial judge's determination that the prosecution has employed diligent effort in attempting to obtain the attendance of a witness will not be disturbed on appeal unless this Court finds that the trial judge abused his discretion in determining that a witness was "unavailable." See Lamar v. State, 578 So.2d 1382 (Ala.Cr.App. 1991); Kuchel v. State, 570 N.E.2d 910 (Ind. 1991); Johnston v. State, 517 N.E.2d 397 (Ind. 1988); State v. Carter, 226 Neb. 636, 413 N.W.2d 901 (1987); United States v. Campbell, 845 F.2d 1374, 1378 (6th Cir.1988), cert. denied, 488 U.S. 908, 109 S.Ct. 259, 102 L.Ed.2d 248 (1988).
At trial, the State called Sandy Sanders to testify as to the efforts she employed to obtain the unavailable witnesses' attendance. Sanders testified that she was employed as a secretary at the Sunflower County District Attorney's office and that it was her job to subpoena all witnesses for trials. Sanders testified to the following efforts that the district attorney's office made to subpoena A.J. Smith:
(1) Issued a subpoena for A.J. Smith to Parchman.[3]

*828 (2) Upon being informed that Smith had been transferred to South Mississippi Correctional facility in Greene County, issued subpoena to Greene County facility for Smith.
(3) Greene County Informed State that Smith had been discharged on July 10, 1992, to Hinds County.
(4) Sanders contacted Hinds County Sheriff's Office to determine if they knew Smith.
(5) Sent subpoena to Hinds County for Smith.
(6) Hinds County Sheriff's Office had an old address on Smith but was unable to locate him.
As to Christopher Womber, Sanders testified that she:
(1) Issued a couple of subpoenas to Parchman for Womber.[4]
(2) Parchman informed Sanders that Womber had been discharged to Washington County.
(3) Sanders contacted Washington County and inquired as to Womber's whereabouts and was told that Washington County was also looking for Womber but they thought he was in Peoria, Illinois.
On cross-examination, Sanders testified that she had not personally contacted the authorities in Peoria, Illinois, regarding Womber because the Washington County Sheriff's Office was searching for Womber and they told her that they would contact her if they were successful in locating Womber. Furthermore, Sanders testified that both of these men were discharged from prison and not released on parole, therefore, neither man had a probation officer that she could check with as to their addresses.
As to Willie Hawkins, the testimony indicated that he had been at court the day prior to the start of this trial. However, at some point later that same day, Hawkins was involved in a serious car accident. Hawkins' daughter was killed and Hawkins suffered two broken legs. As a result of this accident, Hawkins was not available to testify at the resentencing hearing. The comments to Rule 804 state: "[d]eath and sickness render a witness unavailable." The comment cites to two early Mississippi cases for this proposition, i.e., Paulk v. Housing Authority of Tupelo, 228 So.2d 871 (Miss. 1969), and Home Ins. Co. v. Gerlach, 220 Miss. 732, 71 So.2d 787 (1954).
In Mitchell, this Court stated that "the prosecution's burden is to demonstrate diligent effort, not to do everything conceivable." 572 So.2d at 869. In the case sub judice, the district attorney was charged with locating two discharged convicts, i.e., Smith and Womber. Neither man had a parole officer and apparently neither man was required to keep in contact with Mississippi Department of Corrections Officials upon discharge. Likewise, neither could be located in the county where they were discharged. The Hinds County Sheriff's Office had an address on Smith but could not locate him. Womber, who was also sought by the Washington County Sheriff's Office, was thought to be in Peoria, Illinois. After hearing Sanders' testimony and the accompanying cross-examination, the trial judge ruled that Smith, Womber and Hawkins were unavailable for purposes of Miss.R.Evid. 804.
Although the prosecution in the case at bar did not go as far as the prosecution did in Mitchell to find the unavailable witness, we find that the Circuit Court did not abuse its discretion when it held that the prosecution had established Smith, Womber and Hawkins' unavailability. In Mitchell, unlike the case sub judice, the district attorney's office had some possible information from the missing witness' brother as to his whereabouts. 572 So.2d at 868-69. Also, in Mitchell, the absent witness had contacted the Sheriff and told him of his whereabouts. Here, the prosecution was without such inside information as to Smith and Womber's location. As to Hawkins' unavailability, we hold that the trial judge did not abuse his discretion in determining that Hawkins was "unavailable" for purposes of Rule 804. Campbell, 845 F.2d at 1378.
*829 Having found that Smith, Womber and Hawkins were unavailable, the trio's testimony must still fit one of the exceptions of Miss.R.Evid. 804(b). Mitchell, 572 So.2d at 869 (citing Ponthieux v. State, 532 So.2d 1239, 1246 (Miss. 1988)). Rule 804(b)(1) provides:
Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.
The former testimony exception expressed in our Rule 804(b)(1) is a "firmly rooted hearsay exception," Mitchell, 572 So.2d at 870 (quoting United States v. McClellan, 868 F.2d 210, 214-15 (7th Cir.1989)), and therefore, testimony admitted under Miss.R.Evid. 804(b)(1) does not violate the Confrontation Clauses of the federal and state constitutions. Smith, Womber and Hawkins' former testimony was given under oath and was subject to thorough cross-examination. Accordingly, we find the former testimony falls into the definition of Rule 804(b)(1).
Finally, Russell argues that Smith, Womber and Hawkins' former testimony is inadmissible under Rule 804(b)(1) because the prosecution failed to show that the party against whom the testimony was offered "had a similar motive and opportunity to develop the testimony on the previous occasion." We disagree. In the case at bar, the unavailable witnesses' testimony was not offered at the resentencing to prove any of the aggravators offered by the State. Instead, the testimony was offered by the prosecution to satisfy the Enmund factors, i.e., that Russell: actually killed; attempted to kill; intended that a killing take place; contemplated that lethal force be employed. See Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982); Miss. Code Ann. § 99-19-101(7).
At the guilt phase of the trial, Womber, Smith and Hawkins' testimony was offered to establish that Russell stabbed and killed Argentra Cotton. It was certainly in Russell's interest during the guilt phase of the trial to fully cross-examine the witnesses as to the specifics of the murder. In fact, the transcript indicates that Russell thoroughly examined the witnesses as to the events leading up to Cotton's murder. Accordingly, under the facts of this case we find that Russell warrants no relief on this assignment of error.

VI. THE TRIAL COURT ERRED IN ALLOWING EVIDENCE BEYOND THE ACTUAL CONVICTION TO BE ADMITTED TO PROVE THE PRIOR CONVICTIONS.
One of the two aggravators offered by the State and found by the jury was that Russell was previously convicted of another capital offense or of a felony involving the use or threat of violence to the person. Miss. Code Ann. § 99-19-101(5)(b). On appeal, Russell argues that the trial judge committed reversible error in allowing the prosecution to enter into evidence "pen packs" detailing Russell's prior crimes, i.e., two armed robbery convictions, escape and kidnaping convictions. Russell complains that these pen packs "contained information far beyond the mere existence of each of the [prior] convictions." Accordingly, Russell argues, his death sentence should be vacated.
The State argues that the information in the "pen packs" was necessary to the jury's determination that Russell's prior convictions involved crimes of violence. Further, the State contends that the evidence in the pen packs was necessary to establish the second aggravator, i.e., that Russell committed the capital offense while under a sentence of imprisonment. Miss. Code Ann. § 99-19-101(5)(a). The "pen packs" contained: (1) a certification of records form; (2) sentence computation record; (3) social admission interview; (4) commitment; (5) order; (6) indictment; (7) fingerprint card; and (8) photograph of defendant.
Russell cites several cases for the proposition that the "pen packs" should not have been submitted to the jury. First, Russell offers Stringer v. State, 500 So.2d 928 (Miss. *830 1986), to support his argument that his death sentence should be vacated. In Stringer, a mitigation witness for Stringer stated that she did not believe that "Jimbo" would commit any crime, but that her mind could be changed if showed proof of any prior convictions. Thereafter, on cross-examination, the prosecution was allowed to offer evidence of Stringer's prior misdemeanor convictions. Id. at 941. On appellate review, this Court held that it was not error for the prosecution to cross-examine and impeach Stringer's mitigation witness as to Stringer's prior misdemeanors. Id.
Stringer also argued that it was error for the State to go into details of his prior misdemeanor convictions. Upon reviewing the record we found that the record did not show that any details of the convictions were brought out in testimony. Stringer, 500 So.2d at 942. Nevertheless, we cited Allison v. State, 274 So.2d 678 (Miss. 1973), and Mangrum v. State, 232 So.2d 703 (Miss. 1970), and stated "[i]nquiry into the details of prior convictions is improper." Stringer, 500 So.2d at 942.
However, we find that Stringer is inapplicable to the case sub judice. The prior misdemeanor convictions in Stringer were not offered to prove any statutory aggravators. Instead, and unlike the case at bar, the convictions were offered for impeachment purposes. In the case sub judice, the prior convictions were offered to prove statutory aggravators. Accordingly, we do not find any merit in Russell's reliance on Stringer.
Each of the remaining cases relied on by Russell are distinguishable from the case sub judice. In Allison v. State, 274 So.2d 678, 682 (Miss. 1973), this Court held that the prosecution committed reversible error when it impeached the defendant's reputation for peace and nonviolence by inquiring into the details of crimes for which the defendant was not convicted. Likewise, in Gallion v. State, 469 So.2d 1247 (Miss. 1985), this Court recognized that prior convictions may be introduced to impeach the credibility of any witness, but "that a defendant may not be examined about the details of the prior conviction." 469 So.2d at 1249. In Quimby v. State, 604 So.2d 741 (Miss. 1992), this Court once again held that the prosecution could introduce prior convictions to impeach the witness but could not cross-examine the defendant about the details of the previous crime. 604 So.2d at 746.
In all of the cases cited by Russell this Court held that evidence of prior convictions may be admissible to impeach any witness. However, these cases held that it was impermissible for the prosecution to question the defendant as to the specific details of these prior convictions. Nevertheless, the situation here is different than the situations faced by this Court in Stringer, supra; Allison, supra; Gallion, supra; and Quimby, supra. In the case at bar, the evidence was not offered to impeach Russell or any of his witnesses. Instead, the evidence was offered to prove the statutory aggravators.
In Nixon v. State, 533 So.2d 1078, (Miss. 1987), cert. denied, 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1988), this Court stated: "[w]hen considering whether Nixon's prior offense was one involving the use or threat of violence the Court should be mindful that it behooves the prosecutor to prove the existence of each aggravating circumstance beyond a reasonable doubt. Miss. Code Ann. § 99-19-103 (Supp. 1986)." The prosecution's burden in the instant case was to prove beyond a reasonable doubt the existence of two aggravating circumstances, i.e., that Russell was previously convicted of another capital offense or of a felony involving the use or threat of violence to the person (Miss. Code Ann. § 99-19-101(5)(b)) and that Russell committed the capital offense while under a sentence of imprisonment. Miss. Code Ann. § 99-19-101(5)(a). The prosecution offered the "pen packs" to satisfy its burden of proof in the case sub judice.
In Cabello v. State, 471 So.2d 332, 349 (Miss. 1985), cert. denied, 476 U.S. 1164, 106 S.Ct. 2291, 90 L.Ed.2d 732 (1986), as in the present case, the prosecution sought to prove that the capital murder was committed by one who had previously been convicted of another capital offense or of a felony involving use or threat of violence to the person. Miss. Code Ann. § 99-19-101(5)(b). During the sentencing phase, the prosecution offered the following into evidence: a statement from *831 the defendant indicating his birth date and that he had previously gone by the name James Kenna; copies of a bill of information showing that James Kenna had been convicted of armed robbery; copies of court minutes showing that one James Kenna had been convicted of armed robbery on June 23, 1955; and a copy of his mug shot from the Louisiana State Penitentiary. Id. at 347.
On appeal, the defendant claimed that the trial judge committed reversible error in admitting into evidence a copy of his "mug shot" from the Louisiana State Penitentiary. This Court disagreed and recognized that while generally evidence of other crimes perpetrated by the accused is not admissible, this principle loses its significance in the sentencing phase of a capital murder case, when "[a] prior conviction `of another capital offense or of a felony involving the use or threat of violence to the person' is admissible ... as an aggravating circumstance to be considered by the jury in determining punishment." Cabello, 471 So.2d at 347 (quoting Gray v. State, 351 So.2d 1342, 1345 (Miss. 1977)).
In Nixon, we recognized that the trial judge is not required to go beyond the face of the certificate of conviction to determine the validity of a previous conviction. 533 So.2d at 1099. However, we did not say that the trial judge was prohibited from doing so. In the case sub judice, the "pen packs" were relevant under Miss. Code Ann. § 99-19-101(5)(b) and Cabello, 471 So.2d at 347-48, to prove beyond a reasonable doubt the two statutory aggravators. Accordingly, this assignment of error is without merit.

VII. THE TRIAL COURT ERRED IN PERMITTING PROOF OF A PRIOR ESCAPE WHERE IT WAS NOT PROVED THAT SUCH WAS A PRIOR CRIME OF VIOLENCE.
Russell's next argument is related to assignment of error 6, supra. In this assignment of error Russell contends that the lower court erred in allowing Barbara Bailey, the assistant records officer at Parchman, to testify that Russell had been convicted of a prior crime of escape by violence. Russell argues that this was error because the certificate of conviction indicates that Russell pled guilty to the charge of escape and not escape by violence.
At trial Bailey testified as follows:
Prosecution: Do your records reflect a conviction in Cause No. C-30 of the Circuit Court of Hinds County?
Bailey: Yes, they do.
Prosecution: And is that, in fact, a two-count conviction?
Bailey: Yes, it is.
Prosecution: And are both of those crimes, crimes of violence?
Bailey: Yes, they are.
Prosecution: What were they?
Bailey: Escape and Kidnaping.
At this point Russell objected to Bailey's testimony that the escape conviction was a crime of violence. After hearing both sides argument as to whether the conviction for escape was a crime of violence, the trial judge admitted the pen pack dealing with the escape and kidnaping into evidence. Russell objected to the submission of the kidnaping indictment, sentencing order, and time computations. Notwithstanding Russell's objection, the lower court allowed the "pen pack" to be submitted as evidence.
In Nixon v. State, 533 So.2d 1078 (Miss. 1987), the defendant made an argument similar to that now advanced by Russell. Some years before his capital murder trial, Nixon pled guilty to statutory rape in Texas. Thereafter, the prosecution in Nixon's capital murder case sought to use the earlier conviction for statutory rape as an aggravator under Miss. Code Ann. § 99-19-101(5)(b). Nixon objected to the use of the statutory rape conviction and stated "[t]here is absolutely no doubt that this was a conviction for Statutory Rape" and was therefore not a crime involving the threat or use of violence. Nixon, 533 So.2d at 1098-99.
This Court looked to the indictment under which Nixon was convicted. The language in the indictment indicated that Nixon had "assault[ed]" and "ravished" the victim. We then looked to Texas case law for guidance *832 and determined that Nixon had used force to obtain sex from the victim. Id. at 1099. Accordingly, we rejected Nixon's argument and held "the indictment to which he pled guilty alleged that he assaulted and ravished his victim. Because those terms were used and were not required, this Court holds that the logical conclusion is that Nixon's rape involved force and want of consent ..." Id.
In the case sub judice, the indictment under which Russell pled guilty states in pertinent part:
[D]id wilfully and unlawfully escape from the custody of the Mississippi Department of Corrections, he, the said Willie C. Russell having been convicted of a criminal offense and sentenced to the custody of the Mississippi Department of Corrections and incarcerated in the Mississippi State Penitentiary at Parchman, Mississippi, while off the boundaries of the said Mississippi State Penitentiary and at the University Medical Center, but while still in custody of the said Mississippi Department of Corrections, he, the said Willie C. Russell, using force or violence in effecting his escape by then and there putting a pistol to the head of Douglas Moore, forcing the said Douglas Moore to leave the University Medical Center, and forcing the said Douglas Moore to drive him away from the said University Medical Center, in violation of Section 97-9-47, Mississippi Code, 1972.

As Russell points out, the order indicates the he pled guilty to "Escape" and not "Escape by force or violence." We note however, that there is no offense simply entitled "escape" in the Mississippi Code. Nonetheless, Russell's sentencing order indicated that he was sentenced to five years in prison for the escape. Miss. Code Ann. § 97-9-47 (1972), the crime for which Russell was indicted, provides for a minimum sentence of five years imprisonment. Therefore, we hold that the record does not support Russell's contention that he pled guilty to an offense less than Miss. Code Ann. § 97-9-47 (1972). The indictment contained in Russell's "pen pack" is relevant and admissible under Miss. Code Ann. § 99-19-101(5)(b), and Cabello, 471 So.2d at 347-48, and could be used to show that Russell's previous escape was a crime of violence for purposes of Miss. Code Ann. § 99-19-101(5)(b). Nixon, 533 So.2d at 1099. Accordingly, Russell merits no relief on this assignment of error.

VIII. IT WAS ERROR FOR THE TRIAL COURT TO MODIFY ITS RULING PROHIBITING THE STATE FROM INTRODUCING EVIDENCE OTHER THAN THAT RELATING TO THE TWO AGGRAVATING CIRCUMSTANCES.

IX. IT WAS ERROR FOR THE TRIAL COURT TO PERMIT THE PROSECUTION TO PUT INTO EVIDENCE MATTERS BEYOND THE SCOPE OF THE TWO AGGRAVATING CIRCUMSTANCES.
Russell combines these two assignments of error in his brief and they will be discussed jointly in this opinion. Russell contends here that the lower court erred in modifying its February 22, 1993, motion in limine which prohibited the prosecution from offering any evidence of aggravating circumstances other than: (1) The capital offense was committed by a person under sentence of imprisonment; and (2) the defendant was previously convicted of another capital offense or of a felony involving the use or threat of violence to the person. Russell argues that the lower court's decision to allow the prosecution to put on evidence of the actual killing denied him due process because the prosecution was allowed to put on evidence to show that the murder was "especially atrocious, heinous or cruel." Notwithstanding Russell's argument, the jury was not instructed as to the "especially atrocious, heinous or cruel" aggravator. Nor did the prosecution argue that the murder was "especially atrocious, heinous or cruel."
Russell argues that the second sentencing jury should not have been informed of any of the details of Cotton's murder. The lower court's decision to allow the prosecution to put on testimony from the guilt phase of the trial, Russell argues, put the "especially atrocious, heinous or cruel" aggravator before the sentencing jury in violation of the February *833 25, 1993, Order Sustaining Defendant's Motion In Limine. Therefore, Russell argues, his death sentence must be vacated.
Russell relies on Lankford v. Idaho, 500 U.S. 110, 111 S.Ct. 1723, 114 L.Ed.2d 173 (1991), to support the proposition that he was denied due process when the trial judge allowed the prosecution to submit evidence of the actual murder to the second sentencing jury. We disagree and find that Russell's reliance on Lankford, is misplaced.
The issue before the United States Supreme Court in Lankford was whether, at the time of petitioners's sentencing hearing, he and his counsel had adequate notice that the trial judge might sentence him to death. 500 U.S. at 111, 111 S.Ct. at 1724-25. In Lankford, the prosecution was required to notify the court and the petitioner whether the State would seek the death penalty, and if so, to file a statement of the aggravating circumstances on which it intended to rely. Id. at 114, 111 S.Ct. at 1726.
The prosecution notified Lankford that it would not seek the death penalty. A fortiori, Lankford was not apprised of any aggravating factors that the State would attempt to prove. At the sentencing hearing, the prosecutor introduced a transcript from the guilt phase of the trial but did not offer any evidence of aggravators. Thereafter, the prosecutor recommended to the judge that Lankford be sentenced to an indeterminate life sentence. Id. at 116, 111 S.Ct. at 1727.
At the conclusion of the sentencing hearing, the trial judge indicated that Lankford should receive a more severe punishment than that requested by the State. Then, the trial judge "found" five aggravating factors and sentenced Lankford to death. On appeal, the United States Supreme Court reversed Lankford's death sentence and held that he had been denied due process of law because he had not been informed by the State that it would seek the death penalty and because he had not received notice of any of the five aggravators that the trial judge found, thus, depriving him of the ability to rebut or defend against those aggravators. Id. at 122, 111 S.Ct. at 1730.
The factual situation in the case sub judice is clearly different than that facing the Court in Lankford. In Lankford, the defendant went into the sentencing hearing thinking that he could not receive the death penalty. In addition, Lankford was not apprised of any aggravating circumstances that the State would attempt to prove at the sentencing.
In the case sub judice, Russell entered the sentencing hearing knowing that the prosecution was seeking the death penalty and that the State would there attempt to prove two aggravators and the proof associated with each, i.e., Miss. Code Ann. §§ 99-19-101(5)(a), 99-19-101(5)(b). Also, we find that the following pre-trial exchange indicates that Russell was apprised that the jury would be informed of the facts surrounding the murder and that Russell did not object:
BY THE COURT: Well, I think they are entitled to know what the facts of the crime are, but I think it's a question of how much depth-how much emphasis you can put on those facts, and I will just have to reserve ruling on that until that evidence is presented. I don't know what we are talking about, but I think that the jury has to understand some basic facts other than just a mere stipulation, and I think it would be better to just put on some proof that that is the way it was just so they can understand the facts.

BY MR. MOUNGER: Sort of a prima facie showing? I'm just talking here. That phrase just came to my mind.
BY THE COURT: Well, I don't think  I think particularly in light of the agreement to limit the aggravating circumstances that I can't allow a great deal of emphasis to be put on the heinousness, atrociousness, and cruelty of the crime, but I think they are entitled to understand the factual situation.

BY MR. STUCKEY: Okay, we don't have any objection to that.

BY THE COURT: And I'm just not going to allow  I would agree, in light of the motion in limine, not to let the State just to dwell on anything that may be heinous, atrocious, and cruel concerning the thing, but I think they are entitled to present the facts concerning the crime and what happened *834 so the jury can have a general understanding of what's going on-or what went on, why they are being asked to impose a death sentence. I think it would be treating the case and the jury lightly to do otherwise.

BY MR. STUCKEY: Yes, sir. This may be skipping around a little bit, but I would like to just ask Hallie Gail without making a motion; do you intend to, through the classification lady, and I forgot her name, or maybe Chris Epps; either one of them; to mention that he's on death row?
We find that this assignment of error is without merit and is an attempt to lead this Court into a discussion of whether Russell's killing of Cotton was especially heinous, atrocious or cruel. Miss. Code Ann. § 99-19-101(5)(h). Here, the jury was not instructed that they could find that the murder was such, nor did the prosecution argue that the murder was especially heinous, atrocious or cruel. The evidence of the actual murder was submitted, not to prove the especially heinous aggravator, but was submitted so that the jury could find the existence of the Enmund factors. The State has the right and requirement, in death penalty resentencing cases, to put on evidence impacting on the Enmund factors. Accordingly, Russell's reliance on Lankford, supra, is without merit.
Russell also contends that language in Coleman v. State, 378 So.2d 640, 648 (Miss. 1979), and Leatherwood v. State, 539 So.2d 1378, 1383 (Miss. 1989), prevent the prosecution, in the sentencing phase, from introducing evidence of the crime except for that evidence which is relevant to one or more of the eight enumerated aggravating circumstances. We disagree. Coleman and Leatherwood are legally distinguishable from the case at bar and thus, are not dispositive to the case sub judice.
In Coleman, this Court interpreting Miss. Code Ann. § 99-19-101(1) and (5) (Supp. 1978), stated:
Subsection (5) of § 99-19-101 plainly states that the aggravating circumstances "shall be limited" to the eight aggravating circumstances listed. Read in conjunction with subsection (1), the State is limited to introducing evidence relevant to one or more of the eight enumerated aggravating circumstances.
378 So.2d at 648.
It is important to note that this Court, in Coleman, interpreted Miss. Code Ann. § 99-19-101 (Supp. 1978). The 1978 version of § 99-19-101 did not require that the jury find the Enmund factors set forth in Miss. Code Ann. § 99-19-101(7) (Supp. 1983). Prior to the United States Supreme Court's ruling in Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), the capital sentencing jury in Mississippi was not required to find the four Enmund factors. In White v. State, 532 So.2d 1207, 1219 (Miss. 1988), this Court recognized that "[s]ection 99-19-101(7) was enacted in 1983 in obvious response to Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982)."
In Leatherwood, we relied upon the analysis found in Coleman and stated: "[i]n Coleman, this Court held in clear and unambiguous language that, during sentencing, the State is limited only to presenting evidence "relevant to one or more of the eight enumerated aggravating circumstances" in Miss. Code Ann. § 99-19-101 (Supp. 1988)." Leatherwood, 539 So.2d at 1383. Unlike Russell, neither Leatherwood nor Coleman was tried and sentenced to death under a version of Miss. Code Ann. § 99-19-101 that required the jury make the Enmund findings and therein lies the difference between the case at bar and Coleman and Leatherwood. See Leatherwood v. State, 435 So.2d 645, 648 (Miss. 1983).
Miss. Code Ann. § 99-19-101(1), provides in part: "If, through impossibility or inability, the trial jury is unable to reconvene for a hearing on the issue of penalty, having determined the guilt of the accused, the trial judge may summon a jury to determine the imposition of the penalty... . In the [penalty phase] proceeding, evidence may be presented as to any matter that the court deems relevant to sentence, and shall include matters relating to any of the aggravating or mitigating circumstances." (emphasis added). The Mississippi Rules of Evidence 401 define "relevant evidence" as:

*835 evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
Miss. Code Ann. § 99-19-101(7) requires that the jury sentencing the defendant to death make a written finding of one or more of the following:
(a) The defendant actually killed;
(b) The defendant attempted to kill;
(c) The defendant intended that a killing take place;
(d) The defendant contemplated that lethal force would be employed.
At least one of these "Enmund factors" must be found to exist beyond a reasonable doubt before a defendant can be sentenced to death. White v. State, 532 So.2d 1207, 1222 (Miss. 1988). Accordingly, applying the logic and rationale employed in Coleman, 378 So.2d at 648, and relied upon by this Court in Leatherwood, 539 So.2d at 1383, to the case sub judice, when we read subsection (1) of § 99-19-101 in conjunction with subsections (5) and (7), we hold that the State, in its case-in-chief, is permitted to introduce evidence relevant to one or more of the eight aggravating circumstances along with evidence from the guilt phase relevant to the Enmund factors.
In the case at bar, the testimony dealing with Cotton's murder was offered not to prove that the murder was "especially atrocious, heinous or cruel," but was offered to give this second sentencing jury evidence of the specific facts surrounding the murder. Thus, evidence of the murder submitted to the sentencing jury was not only relevant to the sentence but was required in order for the jury to find beyond a reasonable doubt the factor(s) required in Miss. Code Ann. § 99-19-101(7) and Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). Accordingly, Russell merits no relief on this assignment of error.

X. THE TRIAL COURT ERRED IN NOT GRANTING A MISTRIAL AFTER THE PROSECUTION FLOUTED THE TRIAL COURT'S EARLIER RULING AND COMMENTED ON THE DEFENDANT'S FAILURE TO TESTIFY.
Russell testified at the October 1990, guilt phase of this trial and admitted on the stand that he broke out of his cell and stabbed Cotton. In this assignment of error, Russell argues that the prosecution's attempt to introduce evidence of his guilt phase testimony violated his Fifth Amendment rights against self-incrimination under the Constitution of the United States of America and under Art. 3, § 26 of the Miss. Const. (1890). Russell contends that the prosecutor's comment warrants vacation of his death sentence and the imposition of a sentence of life imprisonment. We disagree.
During the prosecution's case-in-chief, Highway Patrol Officer Charles Rogers was called to the stand and questioned as follows:
Prosecution: Mr. Rogers, were you present in the courtroom on another occasion during which the Defendant, Willie Russell, made certain statements concerning his involvement in the crime?
Rogers: I was.
Prosecution: And he was under oath at the time he made these statements?
Rogers: He was.
At this point, the trial judge told counsel to approach the bench and Russell requested a hearing in chambers. Russell objected to the prosecution's attempt to use his confession given at the guilt phase of his trial and asked for a mistrial. The prosecution countered and offered that Russell's confession, given on the witness stand at the guilt phase, was a statement against interest and was admissible to show that Russell testified under oath that he escaped from his cell and stabbed Cotton with a shank. The trial judge sustained Russell's objection and informed the prosecution that it could not introduce the transcript of Russell's guilt phase testimony nor could the prosecution call any witness and question them about Russell's confession given on the witness stand during the guilt phase of his trial.
Russell argues that the prosecution's attempt to question Rogers about Russell's confession given on the witness stand during the guilt phase was a comment on his failure *836 to take the stand and violates this Court's rulings in Butler v. State, 608 So.2d 314 (1992) and Griffin v. State, 557 So.2d 542 (Miss. 1990). Notwithstanding Russell's argument, we find that the case at bar is readily distinguishable from the authorities cited in Russell's brief.
In Butler, the defendant chose not to take the stand during the guilt phase of her capital murder trial. Thereafter, in the guilt phase closing arguments, the prosecutor made a comment about Butler's failure to take the stand. On appeal, this Court reversed Butler's conviction. Id. at 318.
Likewise, in Griffin v. State, 557 So.2d 542 (Miss. 1990), the defendant chose not to take the stand in the guilt phase of his capital murder trial. As was the case in Butler, the prosecution commented on the defendant's failure to take the stand. Id. at 552. On appeal, we reversed the defendant's conviction and remanded for a new trial. Id. at 554.
The facts in the case sub judice are distinguishable from those faced by this Court in the preceding cases. First, and unlike Butler, supra, and Griffin, supra, Russell testified in the innocence/guilt phase of his trial. Russell v. State, 607 So.2d 1107, 1114 (Miss. 1992). Second, the prosecutor did not comment during closing argument that Russell had refused to take the stand. Instead, the prosecution, during its case-in-chief, attempted to introduce testimony from a witness who was in the courtroom at the guilt phase of Russell's trial to testify that Russell confessed to stabbing Cotton. The trial judge called the attorneys into chambers and refused to allow the State to question the witness as to Russell's earlier testimony. Finally, at the time the prosecution attempted to put on evidence of Russell's October 1990, guilt phase confession, Russell had not informed the trial court that he would not testify. In fact, Russell did not inform the trial court of his decision not to take the stand until after the State's case-in-chief. Accordingly, while the prosecution's attempt to admit into evidence Russell's October 1990, testimony may have made his decision not to take the stand more difficult in the March 1993, sentencing, it clearly was not a comment on Russell's "failure to take the stand." Russell merits no relief on this assignment of error.

XI. THE TRIAL COURT ERRED IN ALLOWING THE STATE'S EXPERTS TO EXPRESS THEIR LEGAL OPINION THAT RUSSELL'S MENTAL DISORDER WAS AN INSUFFICIENT LEGAL EXCUSE FOR THE JURY TO FIND IT TO BE A MITIGATING FACTOR JUSTIFYING THE IMPOSITION OF A LIFE SENTENCE.
In this assignment of error Russell contends that the trial court erred in allowing state experts to express their opinion that Russell's mitigation evidence was insufficient to impose a life sentence. Specifically, Russell objects to Dr. Donald Guild's testimony that his anti-social personality disorder was not a disease and should not be used to excuse his behavior. On appeal, Willie Russell takes further issue with Dr. Stanley Russell's statement that Willie Russell's personality disorder did not excuse him for killing Cotton. Finally, Russell objects to Dr. Carlton Stanley's testimony that anti-social personality disorder was never meant to be used as an excuse for one's actions.
The State correctly points out that the defense failed to object to any of these statements at trial. Chase v. State, 645 So.2d 829, 835 (Miss. 1994) (citing Cole v. State, 525 So.2d 365, 369 (Miss. 1987), cert. denied, 488 U.S. 934, 109 S.Ct. 330, 102 L.Ed.2d 348 (1988)) (If no contemporaneous objection is made, the error, if any, is waived.). The record clearly indicates that Russell failed to object to the cited examples of "error." Accordingly, we hold that Russell is procedurally barred from raising this issue on appeal.

XII. THE COURT ERRED IN HOLDING THAT A MITIGATION WITNESS' TESTIMONY TO THE EFFECT THAT WILLIE RUSSELL WOULD NEVER KILL AGAIN OPENED THE DOOR TO THE PROSECUTION'S PROVING FUTURE DANGEROUSNESS.
Russell contends that the lower court erred in allowing the prosecution to submit Russell's Rules Violation Reports *837 ("RVR's") from Parchman to rebut Louise Robinson's testimony. Robinson, when asked why Russell should get life imprisonment instead of death, stated: "I believe if he had it to do all over again, I don't believe he would do it." Thereafter, in a hearing conducted outside the presence of the jury, the prosecution sought to introduce evidence of Russell's RVR's that had occurred since Russell killed Cotton. The trial judge ruled that the prosecution could submit the RVR's to impeach Robinson's testimony. On appeal, Russell argues that the trial judge's decision to allow the prosecution to introduce the Rules Violation Reports and the lower court's failure to give a limiting instruction as to the use of the RVR's was reversible error.
Assuming arguendo that the lower court erred in holding that Russell's mitigation witness opened the door for the introduction of Russell's RVR's, the State correctly points out that the jury was not informed of the RVR's. In fact, this Court, after reviewing the record, could find no mention of the RVR's to the jury. The record simply does not support Russell's argument. The RVR's were not offered into evidence nor were any of the witnesses questioned as to Russell's violations.
The closest the prosecution got to mentioning Russell's RVR's was the following exchange that occurred during the cross-examination of Walter Kelly:
Kelly: Well, it's hard for me to believe, because Willie  like I say, it's hard for me to believe that Willie would harm somebody.
Prosecution: Well, what about this, a couple of weeks ago 
Mr. Stuckey: Objection, Your Honor, about a couple weeks ago. I don't think she can get this in, and I don't want her to get it in through cross examination improperly. He indicates that he knows nothing about it.
The Court: Counsel, approach the bench.
COUNSEL FOR STATE, COUNSEL FOR DEFENDANT AND COURT REPORTER APPROACHED THE BENCH WHEREUPON THE FOLLOWING OCCURRED, TO-WIT:
The Court: I'm not sure what evidence you're talking about.
Mr. Stuckey: I think she's talking about the rules violation.
... .
The lower court sustained Russell's objection and the prosecution was not allowed to cross-examine Walter Kelly as to any RVR's. Likewise, the discussion was held at sidebar and the record does not indicate that the jury received any information as to the RVR's through this exchange.
Russell also argues that his sentence should be reversed because "not only was the evidence [RVR's] admitted, it was erroneously argued as substantive evidence." Here, Russell argues that the evidence of the RVR's was erroneously used by the prosecution as substantive evidence during closing argument. Once again Russell fails to demonstrate where the prosecution made use of the RVR's in its closing argument. Be that as it may, this Court has held that closing argument is not evidence. Ormond v. State, 599 So.2d 951, 961 (Miss. 1992). In the case sub judice, the jury was instructed that counsel's argument was not evidence. The prosecution's mention during closing argument of any violence dealt with Russell's escape and kidnaping of a security guard while at the University Medical Center and his later escape from his prison cell when he killed Cotton. Both of these events were supported by the evidence adduced at trial. There was no mention of any RVR's. Accordingly, this assignment of error is not supported by the record nor does it have any merit. Russell merits no relief on this assignment of error.

XIII. IT WAS ERROR FOR THE TRIAL COURT TO INSTRUCT THE JURY THAT THEY "MAY CONSIDER THE DETAILED CIRCUMSTANCES OF THE OFFENSE FOR WHICH THE DEFENDANT WAS CONVICTED."
Russell argues that the lower court erred in allowing the sentencing jury to consider the "detailed circumstances of the offense for which the Defendant was convicted" *838 along with the aggravating and mitigating circumstances. Once again Russell relies upon Coleman v. State, 378 So.2d 640, 648 (Miss. 1979), to support his argument that the jury was only entitled to consider evidence that was relevant to one or more of the aggravating circumstances.
As discussed in Assignment of Error IX, supra, the sentencing jury must consider the circumstances of the offense in order to find the Enmund factors as required by Miss. Code Ann. § 99-19-101(7). See, e.g., White v. State, 532 So.2d 1207, 1219 (Miss. 1988). Without considering the evidence of the offense itself, this second sentencing jury could not find one or more of the required Enmund factors, i.e., that Russell: actually killed; attempted to kill; intended that a killing take place; contemplated that lethal force would be employed. Accordingly, we hold that this assignment of error is without merit.
The State also points out that this assignment of error is procedurally barred. The State notes that Russell failed to object to this instruction at trial. In fact, the record indicates that Russell accepted the instruction without any objection to the language dealing with the "detailed circumstances of the offense." Therefore, in addition to this assignment of error being devoid of merit, we find that Russell is procedurally barred from raising this issue on appeal. Conner v. State, 632 So.2d 1239, 1255 (Miss. 1993), cert. denied, ___ U.S. ___, 115 S.Ct. 314, 130 L.Ed.2d 276 (1994).

XIV. THE SENTENCING VERDICT INSTRUCTION WAS DEFECTIVE IN A MANNER WHICH VIOLATES STATE LAW AND THE EIGHTH AMENDMENT.
Russell argues that the sentencing verdict instruction was deficient in that it failed to include a means in which the jury could indicate that it was not unanimous for life imprisonment or death. Russell also indicates that the sentencing verdict form was defective because the instruction provided only a single signature line and that line was under the death option. Based upon these two alleged errors, Russell contends that his death sentence should be reversed.
Once again the State argues that Russell is procedurally barred from raising this issue on appeal. The State correctly points out that Russell did not lodge a contemporaneous objection to this sentencing instruction at trial. See Foster, supra; Chase, supra; Cole, supra. Therefore, the State argues, Russell is procedurally barred from raising this issue on appeal. We agree. Thus, Russell is entitled to no relief on this assignment of error.

XV. THE DEATH SENTENCE SHOULD BE REVERSED DUE TO THE ACCUMULATION OF ERROR THAT OCCURRED AT SENTENCING.
Russell argues finally that if this Court does not find any one error sufficient to warrant reversal of his death sentence, it should consider all of the errors presented in this appeal and reverse based on cumulative error. See Hansen v. State, 592 So.2d 114, 142 (Miss. 1991), cert. denied, 504 U.S. 921, 112 S.Ct. 1970, 118 L.Ed.2d 570 (1992).
This assignment of error is without merit. The assignments of error raised by Russell are without merit or procedurally barred. Accordingly, this assignment of error is without merit.

CONCLUSION
In addition to reviewing the legal errors enumerated by the defendant for merit, and pursuant to Miss. Code Ann. § 99-19-105(3) (Supp. 1985), this Court shall determine:
(a) Whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor;
(b) Whether the evidence supports the jury's or judge's findings of a statutory aggravating circumstance as enumerated in Section 99-19-101; and
(c) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.
Since Jackson v. State, 337 So.2d 1242 (Miss. 1976), this Court has upheld the imposition of the death penalty in the cases listed in the *839 appendix. We have carefully reviewed those cases in the appendix and compared them with the case and sentence sub judice.
We find that the sentence of death in the case sub judice was not imposed under the influence of passion, prejudice, or any other arbitrary factor; that the evidence supports the jury's finding of statutory aggravating circumstances listed in Miss. Code Ann. § 99-19-101(5) (Supp. 1983); and, after considering the crime and the appellant, we find that the sentence of death in this case is not excessive or disproportionate to other similar cases in which such sentence has been imposed.
For all of the above noted reasons, we find no error in the trial below, having reviewed the record as submitted from the Circuit Court of Sunflower County; therefore, we affirm the conviction of capital murder and sentence of death.
CONVICTION OF CAPITAL MURDER AND SENTENCE OF DEATH AFFIRMED. EXECUTION DATE TO BE SET WITHIN SIXTY DAYS OF FINAL DISPOSITION OF THIS CASE PURSUANT TO MISS. CODE ANN. § 99-19-105(7) (1972) AND M.R.A.P. 41(a).
PRATHER, P.J., and McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
BANKS, J., dissents with separate written opinion joined by SULLIVAN, P.J., and PITTMAN and MILLS, JJ., not participating.

APPENDIX

DEATH CASES AFFIRMED BY THIS COURT
Davis v. State, 660 So.2d 1228 (Miss. 1995).
Carr v. State, 655 So.2d 824 (Miss. 1995)
Mack v. State, 650 So.2d 1289 (Miss. 1994)
Chase v. State, 645 So.2d 829 (Miss. 1994)
Foster v. State, 639 So.2d 1263 (Miss. 1994)
Conner v. State, 632 So.2d 1239 (Miss. 1993).
Hansen v. State, 592 So.2d 114 (Miss. 1991).
[*]Shell v. State, 554 So.2d 887 (Miss. 1989), Shell v. Mississippi, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990) reversing, in part, and remanding, Shell v. State, 595 So.2d 1323 (Miss. 1992) remanding for new sentencing hearing.
Davis v. State, 551 So.2d 165 (Miss. 1989).
Minnick v. State, 551 So.2d 77 (Miss. 1989).
[*]Pinkney v. State, 538 So.2d 329 (Miss. 1989), Pinkney v. Mississippi, 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990) vacating and remanding Pinkney v. State, 602 So.2d 1177 (Miss. 1992) remanding for new sentencing hearing.
[*]Clemons v. State, 535 So.2d 1354 (Miss. 1988), Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990) vacating and remanding, Clemons v. State, 593 So.2d 1004 (Miss. 1992) remanding for new sentencing hearing.
Woodward v. State, 533 So.2d 418 (Miss. 1988).
Nixon v. State, 533 So.2d 1078 (Miss. 1987).
Cole v. State, 525 So.2d 365 (Miss. 1987).
Lockett v. State, 517 So.2d 1346 (Miss. 1987).
Lockett v. State, 517 So.2d 1317 (Miss. 1987).
Faraga v. State, 514 So.2d 295 (Miss. 1987).
[*]Jones v. State, 517 So.2d 1295 (Miss. 1987), Jones v. Mississippi, 487 U.S. 1230, 108 S.Ct. 2891, 101 L.Ed.2d 925 (1988) vacating and remanding, Jones v. State, 602 So.2d 1170 (Miss. 1992) remanding for new sentencing hearing.
Wiley v. State, 484 So.2d 339 (Miss. 1986).
Johnson v. State, 477 So.2d 196 (Miss. 1985).
Gray v. State, 472 So.2d 409 (Miss. 1985).
Cabello v. State, 471 So.2d 332 (Miss. 1985).
Jordan v. State, 464 So.2d 475 (Miss. 1985).
Wilcher v. State, 455 So.2d 727 (Miss. 1984).
Billiot v. State, 454 So.2d 445 (Miss. 1984).
Stringer v. State, 454 So.2d 468 (Miss. 1984).
Dufour v. State, 453 So.2d 337 (Miss. 1984).
Neal v. State, 451 So.2d 743 (Miss. 1984).
Booker v. State, 449 So.2d 209 (Miss. 1984).
*840 Wilcher v. State, 448 So.2d 927 (Miss. 1984).
Caldwell v. State, 443 So.2d 806 (Miss. 1983).
Irving v. State, 441 So.2d 846 (Miss. 1983).
Tokman v. State, 435 So.2d 664 (Miss. 1983).
Leatherwood v. State, 435 So.2d 645 (Miss. 1983).
Hill v. State, 432 So.2d 427 (Miss. 1983).
Pruett v. State, 431 So.2d 1101 (Miss. 1983).
Gilliard v. State, 428 So.2d 576 (Miss. 1983).
Evans v. State, 422 So.2d 737 (Miss. 1982).
King v. State, 421 So.2d 1009 (Miss. 1982).
Wheat v. State, 420 So.2d 229 (Miss. 1982).
Smith v. State, 419 So.2d 563 (Miss. 1982).
Johnson v. State, 416 So.2d 383 (Miss. 1982).
Edwards v. State, 413 So.2d 1007 (Miss. 1982).
Bullock v. State, 391 So.2d 601 (Miss. 1980).
Reddix v. State, 381 So.2d 999 (Miss. 1980).
Jones v. State, 381 So.2d 983 (Miss. 1980).
Culberson v. State, 379 So.2d 499 (Miss. 1979).
Gray v. State, 375 So.2d 994 (Miss. 1979).
Jordan v. State, 365 So.2d 1198 (Miss. 1978).
Voyles v. State, 362 So.2d 1236 (Miss. 1978).
Irving v. State, 361 So.2d 1360 (Miss. 1978).
Washington v. State, 361 So.2d 61 (Miss. 1978).
Bell v. State, 360 So.2d 1206 (Miss. 1978).

DEATH CASES REVERSED AS TO GUILT PHASE AND SENTENCE PHASE
Giles v. State, 650 So.2d 846 (Miss. 1995)
Duplantis v. State, 644 So.2d 1235 (Miss. 1994)
Harrison v. State, 635 So.2d 894 (Miss. 1994)
Butler v. State, 608 So.2d 314 (Miss. 1992).
Jenkins v. State, 607 So.2d 1171 (Miss. 1992).
Abram v. State, 606 So.2d 1015 (Miss. 1992).
Balfour v. State, 598 So.2d 731 (Miss. 1992).
Griffin v. State, 557 So.2d 542 (Miss. 1990).
Bevill v. State, 556 So.2d 699 (Miss. 1990).
West v. State, 553 So.2d 8 (Miss. 1989).
Leatherwood v. State, 548 So.2d 389 (Miss. 1989).
Mease v. State, 539 So.2d 1324 (Miss. 1989).
Houston v. State, 531 So.2d 598 (Miss. 1988).
West v. State, 519 So.2d 418 (Miss. 1988).
Davis v. State, 512 So.2d 1291 (Miss. 1987).
Williamson v. State, 512 So.2d 868 (Miss. 1987).
Foster v. State, 508 So.2d 1111 (Miss. 1987).
Smith v. State, 499 So.2d 750 (Miss. 1986).
West v. State, 485 So.2d 681 (Miss. 1985).
Fisher v. State, 481 So.2d 203 (Miss. 1985).
Johnson v. State, 476 So.2d 1195 (Miss. 1985).
Fuselier v. State, 468 So.2d 45 (Miss. 1985).
West v. State, 463 So.2d 1048 (Miss. 1985).
Jones v. State, 461 So.2d 686 (Miss. 1984).
Moffett v. State, 456 So.2d 714 (Miss. 1984).
Lanier v. State, 450 So.2d 69 (Miss. 1984).
Laney v. State, 421 So.2d 1216 (Miss. 1982).

DEATH CASES REVERSED AS TO PUNISHMENT AND REMANDED FOR RESENTENCING TO LIFE IMPRISONMENT
Reddix v. State, 547 So.2d 792 (Miss. 1989).
Wheeler v. State, 536 So.2d 1341 (Miss. 1988).
White v. State, 532 So.2d 1207 (Miss. 1988).
Bullock v. State, 525 So.2d 764 (Miss. 1987).
Edwards v. State, 441 So.2d 84 (Miss. 1983).
Dycus v. State, 440 So.2d 246 (Miss. 1983).
Coleman v. State, 378 So.2d 640 (Miss. 1979).

DEATH CASES REVERSED AS TO PUNISHMENT AND REMANDED FOR A NEW TRIAL ON SENTENCING PHASE ONLY
[*]Shell v. State, 554 So.2d 887 (Miss. 1989), Shell v. Mississippi, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990) reversing, in part, and remanding, Shell v. State 595 So.2d 1323 *841 (Miss. 1992) remanding for new sentencing hearing.
[*]Pinkney v. State, 538 So.2d 329 (Miss. 1989), Pinkney v. Mississippi, 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990) vacating and remanding, Pinkney v. State, 602 So.2d 1177 (Miss. 1992) remanding for new sentencing hearing.
[*]Clemons v. State, 535 So.2d 1354 (Miss. 1988), Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990) vacating and remanding, Clemons v. State, 593 So.2d 1004 (Miss. 1992) remanding for new sentencing hearing.
[*]Jones v. State, 517 So.2d 1295 (Miss. 1987), Jones v. Mississippi, 487 U.S. 1230, 108 S.Ct. 2891, 101 L.Ed.2d 925 (1988) vacating and remanding, Jones v. State, 602 So.2d 1170 (Miss. 1992) remanding for new sentencing hearing.
Russell v. State, 607 So.2d 1107 (Miss. 1992).
Holland v. State, 587 So.2d 848 (Miss. 1991).
Willie v. State, 585 So.2d 660 (Miss. 1991).
Ladner v. State, 584 So.2d 743 (Miss. 1991).
Mackbee v. State, 575 So.2d 16 (Miss. 1990).
Berry v. State, 575 So.2d 1 (Miss. 1990).
Turner v. State, 573 So.2d 657 (Miss. 1990).
State v. Tokman, 564 So.2d 1339 (Miss. 1990).
Johnson v. State, 547 So.2d 59 (Miss. 1989).
Williams v. State, 544 So.2d 782 (Miss. 1989).
Lanier v. State, 533 So.2d 473 (Miss. 1988).
Stringer v. State, 500 So.2d 928 (Miss. 1986).
Pinkton v. State, 481 So.2d 306 (Miss. 1985).
Mhoon v. State, 464 So.2d 77 (Miss. 1985).
Cannaday v. State, 455 So.2d 713 (Miss. 1984).
Wiley v. State, 449 So.2d 756 (Miss. 1984).
Williams v. State, 445 So.2d 798 (Miss. 1984).
BANKS, Justice, dissenting:
I am compelled to dissent because I fear that the majority resolution of certain issues is erroneous and will have the ultimate effect of delaying these proceedings further.

I.
First, I believe that it is folly to decide an important issue in a death penalty case by speculating about an error in the transcript. It seems to me to be the better practice to remand for a hearing on the issue. The issue involved here is, of course, the alleged erroneous strike of juror Butts for cause in violation of the Witherspoon-Witt[1] doctrine. While it appears logical from reading the transcript that there may have been a mistake confusing Burt with Butts, we should not decide the case based on an interpretation which is at odds with the letter of the record before us. We have in the past dealt with a situation in which a misplaced comma in a transcript approached life or death importance. Reddix v. State, 547 So.2d 792 (Miss. 1989). There, after originally affirming a death sentence in which much consideration was given to evidence supporting a finding that Reddix contemplated that lethal force would be used, this Court, on petition for rehearing, referred to certain affidavits not in the trial court record which "clouded" the issue. A review of the record in this Court reflects that the affidavits included one from an investigator to the effect that the punctuation supplied by the court reporter in transcribing his testimony left a wrong impression as to whether Reddix stated that a gun was present at the scene. Court Record, Miss.Supreme Court, DP 11. While the case was eventually disposed of on a proportionality review, some would have opted for remand to decide the issue, pointing to this Court's long recognized inadequacies as a fact-finder. 547 So.2d at 796 (Prather, J., concurring).
I am not convinced by the reasoning of the majority which suggests that the error in *842 excusing Butts, if any, had no effect on the proceedings because Butts's position in the venire was never reached and could only have been reached under the most unlikely of circumstances. I recognize and appreciate the language in Gray v. Mississippi, 481 U.S. 648, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987), to the effect that an erroneous strike for cause infects the entire process. Gray rejects the notion that a Witherspoon-Witt error may by cured by reference to the fact that the prosecutor has peremptory challenges remaining to strike the juror in question. 481 U.S. at 665, 107 S.Ct. at 2055. The Gray Court wrote expansively, saying that "the nature of the jury selection process defies any attempt to establish that an erroneous Witherspoon-Witt exclusion of a juror harmless." Id. at 665, 107 S.Ct. at 2055. Justice Powell concurring and providing the fifth vote, echoed the view "that an improper exclusion of a juror in a capital case on these grounds should not be subject to a harmlesserror analysis." Id. at 669, 107 S.Ct. at 2057. The United States Supreme Court clearly rejected any claim of harmless error based on supposition concerning the use of peremptory challenges. Id. at 664-65, 107 S.Ct. at 2055.
The majority suggests that United States Supreme Court in Ross v. Oklahoma, Gray was limited to its context. Ross v. Oklahoma, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1980). Indeed, Ross did so limit Gray, but the context to which it was limited is the precise context which now faces this Court, that is, a determination whether supposition concerning the use or non-use of peremptory challenges can render a Witherspoon-Witt violation harmless. That a litigant would exhaust peremptory challenges to get to a particular juror where one juror can mean the difference between life and death is something to be expected rather than doubted. In the process, who can say what the State may or may not have done with respect to actual jurors with whom it would have been faced, had the defendant, grasping for the goal of a supposed sympathetic juror, moved further and further down the venire list. The situation may have been different had the juror in question been beyond the pale of all exercises of peremptory challenges. Because he was not, Gray, which establishes the law of the land, dictates that we not affirm on this record. I would remand to the trial court for the purpose of clarifying the record of the voir dire.

II.
Although Russell has failed to preserve the issue by timely objection, it is high time to note a steady erosion of the quality of the sentencing instructions in capital cases. We have already seen and criticized instructions which leave the life imprisonment and lack of unanimity options to subsequent pages in an instruction, not clearly shown as alternate forms of the verdict. Jenkins v. State, 607 So.2d 1171, 1180 (Miss. 1992). Today's instruction wholly fails to tell the jury what it should do in the event that it cannot unanimously agree on either life or death. There is no lack of unanimity option for the form of the verdict. Under our statute where a jury certifies that it is unable to agree, the court is bound to impose a sentence of life imprisonment. Miss. Code Ann. § 99-19-101 (1972). The failure to provide the jury with instructions guiding it in that situation is especially problematic when we consider it together with the failure of the instructions to convey to the jurors that mitigating factors are to be individually considered and that each juror who individually finds a mitigator to exist is duty bound to weigh that mitigating fact against the aggravating factors in determining whether to cast a vote for death.
For the foregoing reasons, I would remand this case to the trial court for a hearing regarding the question whether the transcript accurately reflects what transpired during the voir dire examination of prospective jurors in this case.
SULLIVAN, P.J., joins this opinion.
NOTES
[1] While attempting to rehabilitate those veniremembers on the fourth panel who had earlier indicated that they would not vote for the death penalty, Russell specifically addressed Mr. Garret, Ms. Anderson and Ms. Hopkins by name when speaking to them. However, Russell did not do the same with Butts and Burt. This makes it difficult for this Court to ascertain to whom he was speaking. It is incumbent upon any appellant who wants to claim prejudicial error to make a proper record of trial proceedings. Hunt v. State, 569 So.2d 1200, 1202 (Miss. 1990) (citing Porter v. State, 564 So.2d 31, 34 (Miss. 1990).
[2] After the twelve jurors and two alternates were selected, one juror began to miscarry. She was excused and the first alternate took her place on the jury. Another alternate was not selected. Nevertheless, this does not change our analysis because this occurred after jury selection was complete.
[3] At the time of the murder, Smith was an inmate at Parchman. Smith witnessed the murder and testified in the guilt phase of Russell's trial.
[4] Womber, like Smith, was an inmate at Parchman when Russell murdered Cotton.
[*] Case was originally affirmed in this Court but on remand from U.S. Supreme Court, case was remanded by this Court for a new sentencing hearing.
[1] Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) (A juror may not be excluded based solely on the expression of conscientious scruples concerning the death penalty.); Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985) (The relevant inquiry is whether the juror's views would "prevent or substantially impair the performance of his duties.").