## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-DP-00867-SCT

## CONSOLIDATED WITH

## NO. 1999-DP-01437-SCT

*LARRY MATTHEW PUCKETT*

*v.*

*STATE OF MISSISSIPPI*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 08/23/1999 |
| TRIAL JUDGE: | HON. RICHARD W. McKENZIE |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL ADELMAN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY LESLIE S. LEE |
| DISTRICT ATTORNEY: | E. LINDSAY CARTER |
| NATURE OF THE CASE: | CRIMINAL - DEATH PENALTY - DIRECT APPEAL |
| DISPOSITION: | AFFIRMED- 06/28/2001 |
| MOTION FOR REHEARING FILED: | 06/09/2000 |
| MANDATE ISSUED: | 7/19/2001 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. The motion for rehearing is denied. The original opinions are withdrawn, and these opinions are substituted therefor.

¶2. Larry Matthew Puckett was convicted of capital murder on August 2, 1996, in the Forrest County Circuit Court and sentenced to death. On direct appeal, this Court remanded the case to the circuit court for a *Batson* hearing. On remand, the trial court denied Puckett's *Batson* motion, and Puckett appeals to this Court.

¶3. After careful review, this Court concludes that the trial court erred in finding that Puckett failed to establish a prima facie case of purposeful racial discrimination. However, the State proceeded to give reasons for the strikes of certain minority jurors, and the trial court held that the reasons given were in fact race neutral. We agree that the State gave sufficiently race-neutral reasons for striking each juror. Therefore, we affirm the trial court's denial of Puckett's *Batson* motion.

## STATEMENT OF FACTS

¶4. Larry Matthew Puckett was indicted for the capital murder of Rhonda Hatten Griffis on October 14, 1995, while engaged in the commission of the crime of sexual battery in violation of Miss Code Ann. § 97-3-19(2)(e) (1994 & Supp. 1998). Venue was transferred from the Forrest County Circuit Court to the Circuit Court for the First Judicial District of Harrison County, Mississippi. The jury returned a unanimous verdict finding Puckett guilty of capital murder and subsequently returned a verdict imposing the death sentence.

¶5. On appeal to this Court, Puckett argued, inter alia, that the trial court erred in allowing the State to peremptorily strike black jurors in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). Puckett is a white male, and his victim, Rhonda Griffis, was a white female. Out of the entire venire totaling 112, there were eleven blacks. There were five blacks remaining prior to the exercise of peremptory challenges. The State used all twelve of its available challenges, eight against whites and four against blacks. Puckett was tried by an all-white jury of six males and six females.

¶6. Without waiting for the trial judge to determine whether Puckett had established a prima facie case of purposeful exclusion of blacks, the State offered reasons for all peremptory strikes during jury selection. The defense counsel stated its rebuttal. The trial judge then ruled on each challenged juror, but failed to make on-the-record factual determinations or independent inquiry concerning each juror as required by *Hatten v. State*, 628 So. 2d 294 (Miss. 1993). This Court remanded the issue for the limited purpose of conducting a *Batson* hearing. *Puckett v. State*, 737 So. 2d 322, 337 (Miss. 1999) (hereinafter *Puckett I*).

¶7. The hearing on remand was held before Circuit Judge Richard W. McKenzie on August 23, 1999. On August 25, 1999, the circuit court entered its order finding that Puckett failed to establish a prima facie case of purposeful racial discrimination and that the strikes made by the State were race neutral. Puckett timely filed a notice of appeal on August 26, 1999. Puckett raises the following issue:

## THE TRIAL COURT ERRED IN DENYING PUCKETT'S *BATSON* MOTION.

## STANDARD OF REVIEW

¶8. On review, a trial court's determinations under *Batson* are afforded great deference because they are largely based on credibility. *McGilberry v. State*, 741 So. 2d 894, 923 (Miss. 1999) (citing *Coleman v. State*, 697 So. 2d 777, 785 (Miss.1997)). This Court will not reverse factual findings relating to a *Batson* challenge unless they are clearly erroneous. *Id. See also Woodward v. State*, 726 So. 2d 524, 530 (Miss. 1998); *Lockett v. State*, 517 So. 2d 1346, 1349-50 (Miss.1987). "This perspective is wholly consistent with our unflagging support of the trial court as the proper forum for resolution of factual controversies." *Id.* at 1350.

## DISCUSSION OF LAW

¶9. Puckett alleges that the State's use of four of its twelve peremptory challenges against black jurors constitutes a violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. 2d 69 (1986). The trial court found that Puckett failed to establish a prima facie case of purposeful racial discrimination and that the strikes made by the State were race neutral. Puckett contends that the trial court erred in denying his *Batson* motion.

## A. The Prima Facie Case

¶10. Traditionally, to establish a prima facie case of purposeful racial discrimination in the exercise of peremptory challenges, the opponent of the strike was required to show:

> 1. That he is a member of a "cognizable racial group;"

> 2. That the proponent has exercised peremptory challenges toward the elimination of veniremen of his race; and

> 3. That facts and circumstances raised an inference that the proponent used his peremptory challenges for the purpose of striking minorities.

*Batson v. Kentucky*, 476 U.S. 79, 97, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986). *See also Walker v. State*, 740 So. 2d 873, 880 (Miss. 1999); *Lockett*, 517 So. 2d at 1349. However, this test was modified by the Supreme Court's decision in *Powers v. Ohio*, 499 U.S. 400, 4015 111 S.Ct. 1364, 1373, 113 L.Ed.2d 411 (1991), in which the Court held that a defendant may object to racially-based exercises of peremptory challenges whether or not the excluded jurors and the defendant are of the same race. This holding, in essence, eliminates the first two factors required by *Batson*. *Bush v. State*, 585 So. 2d 1262, 1267-68 (Miss. 1991). Thus, the pivotal question is "whether the opponent of the strike has met the burden of showing that proponent has engaged in a pattern of strikes based on race or gender, or in other words 'the totality of the relevant facts gives rise to an inference of discriminatory purpose.'" *Randall v. State*, 716 So. 2d 584, 587 (Miss. 1998) (quoting *Batson*, 476 U.S. at 94).

¶11. The record reflects that Puckett is white. The State exercised twelve peremptory challenges to the jury pool, four of which were for blacks and eight of which were for whites. As a result of these challenges, every black person was removed from the jury panel, and the jury that was eventually empaneled was composed entirely of white members. Puckett argues that by striking each available prospective black juror, the State created a pattern of strikes against black jurors giving rise to an inference of discrimination. This argument was rejected by this Court in *Puckett I*:

> The fact that all four blacks were stricken from the jury does not necessarily create an automatic inference of purposeful discrimination. The State used all 12 peremptory strikes; 8 were used to eliminate whites. The case at bar is similar to the circumstances in *Davis v. State*, 551 So. 2d 165 (Miss. 1989). Specifically, in *Davis*, the defendant was black, and the all-white jury was composed of four men and eight women. However, even though the State had exercised seven of its twelve peremptory challenges to eliminate blacks, the trial court determined no pattern of discrimination was shown in view of the five challenges the State also used against whites. *Thorson v. State*, 653 So. 2d 876, 898 (Miss. 1994) (Smith, J., dissenting) (citing *Davis*, 551 So. 2d at 170). Additionally, the case at bar is distinguishable from *Conerly v. State*, 544 So. 2d 1370, 1372 (Miss. 1989), wherein the State only used five peremptory strikes, all to eliminate black jurors. Had the State in the case at bar used only four peremptory strikes and only to eliminate black jurors, this would have been sufficient to create an inference of purposeful discrimination. The inference of purposeful discrimination was not automatically invoked in this case.

*Puckett I*, 737 So. 2d at 337.

¶12. Puckett also argues that in light of the evidence presented at the *Batson* hearing, this Court's recent

decision in *Walker v. State*, 740 So. 2d 873 (Miss. 1999), mandates that the strikes made by the State in this case give rise to an inference of discrimination. In *Walker*, Walker objected to the State's use of seven of nine peremptory challenges against black jurors. The final jury was composed of ten whites and two blacks, though the population of Marshall County was fifty percent black. The circuit court held that Walker had failed to establish a prima facie case of discrimination based on the State's seating of two blacks on the jury. The circuit court reasoned that if the State's purpose was to excuse based on race, it could have used all twelve strikes against blacks. This Court reversed the finding of the circuit court, stating that "the mere acceptance of other black persons as jurors is no defense to a *Batson* claim." *Id.* at 880 (citing *Conerly v. State*, 544 So. 2d 1370, 1372 (Miss. 1989)). This Court concluded that Walker had presented an inference of racial discrimination and that the trial court erred in failing to conduct a *Batson* hearing. *Id.*

¶13. Puckett argues that he presented an inference of racial discrimination by showing that the State utilized its peremptory strikes to strike each available black juror and that the statistical probability of having an all-white jury in Harrison County is very small. At the hearing below, Puckett offered the testimony of Dr. Stephen Mallory, an Assistant Professor of Criminal Justice at the University of Southern Mississippi. Dr. Mallory testified that the black population of Harrison County is twenty percent of the total population and that blacks constitute forty percent of the voters in the First Judicial District of Harrison County. Dr. Mallory testified that, based on a percentage range from twenty percent to forty percent, the probability of randomly selecting twelve white jurors from these populations ranged from .001 to .006. This Court finds that in light of the minute statistical probability demonstrated by Puckett below, in addition to the fact that the State exercised its challenges to strike every available black juror, the trial court erred in determining that Puckett failed to establish a prima facie case of purposeful racial discrimination.

## B. Race Neutral Explanations

¶14. Once the defendant has established a prima facie case, the burden shifts to the prosecution to articulate race-neutral reasons for each challenged strike. *Walker*, 740 So. 2d at 880 (citing *Batson*, 476 U.S. at 97, 106 S.Ct. 1712; *Bush* at 1268). As this Court explained in *Randall v. State*, 716 So. 2d 584, 588 (Miss. 1998), "the Supreme Court has made clear that for the purposes of step two of *Batson*, any reason which is not facially violative of equal protection will suffice." "The establishment of a race-neutral reason is not a difficult task." *Stewart v. State*, 662 So. 2d 552, 558 (Miss. 1995). This Court has noted:

> The second step of this process does not demand an explanation that is persuasive, or even plausible. "At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."

*Randall*, 716 So. 2d at 588 (quoting *Purkett*, 514 U.S. at 768, 115 S.Ct. at 1771.

¶15. Despite the trial judge's error in determining that Puckett failed to establish a prima facie case of purposeful discrimination, the trial judge's finding that the State articulated race-neutral reasons for its strikes is not clearly erroneous. The reasons supplied by the State are "neutral," related to the particular case tried, and supported by the record. The following explanations were given by the State for each challenged strike.

JUROR NO. 7, GLORIA HAWTHORNE:

MR. HELFRICH [for the State]: ... S2 would be Gloria Hawthorne; she was not responsive on her questionnaire; she was one way and not responsive in open court; on her off days, she likes to sleep half the day; I don't think she would be attentive. S3.

MR. ADELMAN [Puckett's attorney]: Before we move from S2, note for the record that Gloria Hawthorne is a black female.

* * * *

MR. ADELMAN: Our position is that the reason given is not sufficiently a race neutral reason.

MR. HELFRICH: The fact that she sleeps half a day when she is off. I am afraid she will be sleeping here. She was not responsive to questions.

MR. JONES [for the State]: She was not responsive to the death penalty questions, and her questionnaire is totally different in regard to the death penalty.

* * * *

MR. ADELMAN: On her questionnaire, there is no issue about it. First of all, on her off time, she can sleep 100 percent of the time. There is no indication that it has ever interfered with her employment. She is fully employed. As far as death penalty, she stated, "I feel if you take another person's life and the Court can prove that you did it, then you should get the death penalty."

MR. JONES: If the Court please, our objection on the death penalty goes back, in open court she was totally unresponsive, because she didn't indicate when we asked if she was for the death penalty; and she was totally unresponsive to our voir dire, and it is contradictory to what she says in her questionnaire, and for that reason we feel it is race---

MR. ADELMAN: His question on the voir dire was whether or not they could put aside any feelings they had and view the evidence in light of the law.

THE COURT: The Court is of the opinion that cause has been exercised without regard to race or gender and as such would not be challenged under Batson. Who is next?

¶16. Also, at the *Batson* hearing the prosecutor also stated that Hawthorne's questionnaire indicated that she had an inaccurate view of the law. In response to the question "What is your opinion of the death penalty," Hawthorne responded, "I feel if you take another person's life and the court can prove you did it, then you should get the death penalty." The prosecutor stated that this view is uncertain as to what is required in that the court does not have to prove anything.

JUROR NO. 23, MARTHA BRIDGES:

MR. HELFRICH: ... We would strike juror 23, Martha Bridges. In her questionnaire says, Yes, I am sick with back and knee problems, cannot sit or stand a long time; try to work two or three days a week to survive, working by myself so my business would be closed; please excuse me; she does not want to serve; she has medical problems.

THE COURT: That is S6.

MR. ADELMAN: Your Honor, we would note for the record this is a black female, and they have struck the next tendered black as well as another female. This juror did not indicate at any time during voir dire that she would be unable to perform her duties as juror. Her opinion as to the death penalty, It depends on the circumstances. We would submit that the reason given is not race neutral in light of Batson nor is it gender neutral.

THE COURT: The Court is of the opinion that the juror was not struck for the basis of race or gender and as such will not be excused under Batson.

JUROR NO. 36, GLORIA GRAYER:

MR. HELFRICH: No. 36, we would strike Gloria Grayer. Her brother was a victim of a shooting, and she did not want to know the outcome of the case, and for that reason we would strike her.

MR. ADELMAN: For the record, we note that she is a black female. She is the third black tendered and of course the third strike of a black by the prosecution in this case. She was very open. Her opinion of the death penalty was: In some cases justified; in some cases life with no parole is best; she was an open juror. I remember her vividly saying that none of the things would affect her and she could keep an open and clear mind.

THE COURT: Note for the record that she is a member of the African- American race; however, for the reasons tendered to the Court, the Court will rule she was not stricken for racially motivated reasons under Batson versus Kentucky.

JUROR NO. 43, HARVEY WESBY:

MR. HELFRICH: Juror 43, we will strike, Harvey Wesby.

THE COURT: S-10.

MR. ADELMAN: Your Honor, for the record we note that Mr. Wesby is a black male. They have now struck all four blacks on the jury panel.

THE COURT: Let me hear your reasoning on the strikes.

MR. HELFRICH: For the record, Your Honor, the Defendant -- before I get into my reasoning, the Defendant is white and the victim is white. I don't know if that has been clear in the record; I would like that in the record. On his questionnaire, where he says he is pro -- on the death penalty it's okay. He is flippant, and he was not responsive to the question in open court, and for those reasons we would strike him.

MR. ADELMAN: For the record, under Batson and subsequent progeny including Powers versus Ohio it is irrelevant whether or not the Defendant is white and the victim is white. We submit that Mr. Wesby in his questionnaire is totally open; he said the death penalty was okay. I would like to know what is flippant about that. He works regularly in shipping and receiving. They have not given a race neutral reason.

MR. JONES: If the Court please, his answer on here, he says, It is okay. He did not respond in court about the death penalty. The death penalty is a race neutral reason to strike based upon that, and I

am satisfied with the response.

MR. ADELMAN: Jones asked; were there any jurors who could not set aside whatever their opinion was and apply it to the facts and law.

THE COURT: The Court is of the opinion that strike was not based along racially motivated lines and as such will not be excluded under Batson.

¶17. In asserting that the State has not offered race-neutral explanations for the challenged strikes, Puckett argues that the explanations offered by the State are not supported by the record and that the strikes resulted in the disparate treatment of similarly situated jurors. Such considerations, however, are not applicable under step two of *Batson*. The sole inquiry under step two is whether the explanations given are facially violative of equal protection. The Supreme Court has noted that it is error to "combine *Batson*'s second and third steps into one, requiring that the justification tendered at the second step be not just neutral but also at least minimally persuasive." *Purkett*, 514 U.S. at 767-68. Only in the third step does the persuasiveness of the explanation become relevant. *Id.*

¶18. Examining the explanations offered by the prosecutor, it is clear that the State gave sufficiently race-neutral reasons for striking each juror. Regarding the strike against Gloria Hawthorne, the prosecutor stated that because Hawthorne prefers to sleep half a day on her days off, he feared she would be inattentive at trial. This Court has accepted inattentiveness as a race-neutral explanation for the exercise of peremptory strikes. *See Mack v. State*, 650 So. 2d 1289, 1299 (Miss. 1994); *Abram v. State*, 606 So.2d 1015 (Miss.1992); *Lockett*, 517 So. 2d at 1356-57 (citing *United States v. Mathews*, 803 F.2d 325, 331 (7th Cir. 1986); *Townsend v. State*, 730 S.W.2d 424, 426 (Tex.Ct.App. 1987)). Certainly discriminatory intent is not inherent in a prosecutor's fear that a juror may prove inattentive. The prosecutor also stated that Hawthorne's responses to death penalty questions on her written questionnaire differed from her oral statements to the court during voir dire, and that Hawthorne was not responsive during voir dire. This Court included unresponsiveness and inconsistent statements in its listing of acceptable race-neutral explanations in *Lockett*. *Id.* at 1356 (citing *Rodgers v. State*, 725 S.W.2d 477, 480 (Tex.Ct.App. 1987) (inconsistency between oral responses and juror's card)). Finally, the prosecutor stated that Hawthorne's questionnaire demonstrated that she held an inaccurate view of the law. Though this Court has never addressed such an explanation, and though, arguably, Hawthorne's misunderstanding could be cured upon the reading of jury instructions, discriminatory intent is not inherent within the explanation itself.

¶19. Regarding the strike against Martha Bridges, the prosecutor explained that Bridges stated on her written questionnaire that she wished to be excused for medical problems. Though this Court has never addressed a juror's health as a race-neutral explanation of the exercise of a peremptory strike, numerous other jurisdictions have held that the State's concerns about inattentiveness of a potential juror because of a medical condition, and about his or her inability to sit through course of trial because of the condition, is a race-neutral reason. *See, e.g.*, *United States v. Dawn*, 897 F.2d 1444, 1447 (8th Cir.1990); *Jackson v. State*, 640 So.2d 1025 (Ala.Crim.App.1992); *Alen v. State*, 596 So. 2d 1083, 1091 n.11 (Fla.Dist.Ct.App. 1992); *Scott v. State*, 522 S.E.2d 535, 538 (Ga.Ct.App. 1999); *Malone v. State*, 939 S.W.2d 782, 784 (Tex.Ct.App. 1997).

¶20. The prosecutor stated that the State struck Gloria Grayer because her brother was the victim of a shooting, and she did not care to know the outcome of the case. In *Lockett*, this Court included within its list of racially neutral reasons an indication by a juror that he or she lacks commitment to the importance of

the proceedings. ***Lockett***, 517 So. 2d at 1357 (citing ***United States v. Mathews***, 803 F.2d at 331). In ***Mathews***, the juror arrived late, and the prosecutor stated that such indicated a lack of commitment to the importance of the proceedings. Certainly, an admission by a juror that she did not wish to know the outcome of even the proceeding in which the defendant was tried for the murder of her own brother indicates the potential for a lack of commitment to the outcome of a proceeding in which the juror has no personal interest. Discriminatory intent is not inherent in such an explanation.

¶21. Finally, the prosecutor stated that the State struck Harvey Wesby because Wesby's answer to death penalty questions on his written questionnaire differed from his oral responses during voir dire and that Wesby did not respond to questions during voir dire. At the ***Batson*** hearing, the prosecutor explained that this was what the State meant when it called Wesby "flippant." As explained above regarding the State's explanations for the strike exercised against Gloria Hawthorne, this Court has recognized that a juror's unresponsiveness and inconsistent answers are sufficient race-neutral reasons for the exercise of peremptory strikes.

## C. Pretext

¶22. Of course, a facially neutral explanation under step two is not necessarily a non-pretextual explanation under step three. ***Henley v. State***, 729 So. 2d 232, 240 (Miss. 1998). After a neutral explanation has been articulated by the proponent, the trial court must determine whether the opponent of the strike has carried his overall burden of establishing purposeful discrimination. ***Walker***, 740 So. 2d at 880 (citing ***Batson***, 476 U.S. at 98; ***Bush***, 585 So. 2d at 1268). This determination turns primarily on whether the proponent's proffered reasons are pretextual. ***Henley***, 729 So. 2d at 240. The burden remains with the opponent of the strike. ***Purkett***, 514 U.S. at 768, 115 S.Ct. at 1771. Again, this Court accords great deference to the trial court in determining whether the offered explanation is truly a race-neutral reason. ***McFarland v. State***, 707 So. 2d 166, 172 (Miss. 1997) (citing ***Stewart***, 662 So. 2d at 558). "One of the reasons for this is because the demeanor of the attorney using the strike is often the best evidence on the issue of race-neutrality." ***Id.*** (citing ***Stewart***, 662 So. 2d at 559).

¶23. Again, the prosecutor gave three reasons for the strike against Gloria Hawthorne: he feared that her penchant for sleeping on her days off demonstrated that she would prove inattentive at trial, her response to the question "What is your opinion of the death penalty" on the questionnaire demonstrated an inaccurate view of the law, and her response (or lack thereof) during voir dire was inconsistent with her written questionnaire. Puckett does not rebut the first two reasons offered by the State. Puckett argues only that the State's reason for excluding Hawthorne was pretextual because there is no support in the record for the prosecutor's explanation that Hawthorne's "questionnaire is totally different in regard to the death penalty question."

¶24. Specifically, in answer to the question "What is your opinion of the death penalty" on the juror questionnaire, Hawthorne responded, "I feel if you take another person life and the court can prove you did it, then you should get the death penalty." During voir dire, the prosecutor first asked of the venire, "How many of you have a firm opinion as to the death penalty when inflicted according to the law?" There was apparently some confusion between the prosecutor and defense attorney as to what was being asked. The prosecutor rephrased the question, asking which potential jurors "have your minds made up that you could vote for the death penalty if the evidence justified it?" Hawthorne did not respond to the question. The prosecutor asked whether everyone understood the question. The question was repeated a third time, and,

again, Hawthorne did not respond. And finally, the prosecutor asked whether anyone with a fixed opinion, for or against the death penalty, could not set aside that opinion, consider the facts and render a fair verdict. Again, Hawthorne did not respond, despite the fact that she had stated on her questionnaire that she would impose the death penalty if "the court can prove" the defendant took another's life.

¶25. Puckett argues that the prosecutor's line of questions was confusing to the jurors. During the questioning, defense counsel repeatedly objected, and the questions were discussed in chambers. The judge allowed the questioning. On several occasions, the prosecutor clarified his questions, repeated them several times, and even asked whether the members of the venire understood the questions. There is no indication that Hawthorne failed to respond because she did not understand the questions asked.

¶26. Given the deference due the findings of a trial court in determining whether race-neutral explanations offered by the proponent of peremptory strikes are pretextual, it cannot be said that the finding that the prosecutor's explanation that Hawthorne's response to the death penalty questions on voir dire was inconsistent with the answer given on her questionnaire was clear error. Furthermore, the prosecutor offered two other race-neutral reasons for the strike against Hawthorne which are not rebutted by Puckett.

¶27. Puckett also argues that the State's explanation that Hawthorne's responses on voir dire were inconsistent with her questionnaire was pretextual because a white juror similarly situated to Hawthorne was not challenged by the State. Puckett contends that Danny Earl Griffin, Juror No. 2, responded in a manner similar to Hawthorne on his juror questionnaire, yet failed to respond to the death penalty questions during voir dire. Specifically, to the question "What is your opinion of the death penalty" on the questionnaire, Griffin responded, "I agree with it as long as there is certain proof." Like Hawthorne, Griffin did not respond to the death penalty questions during voir dire.

¶28. One of the recognized indicia of pretext is "disparate treatment, that is, the presence of unchallenged jurors of the opposite race who share the characteristic given as the basis for the challenge." *Mack v. State*, 650 So. 2d at 1298. This Court has explained that while such use of challenges is a factor which may be considered by the trial court, where multiple reasons led to the strike of the State to strike one juror, the existence of another juror with one of his or her individual characteristics does not demonstrate that the reasons assigned were pretextual." *See Davis v. State*, 551 So. 2d 165, 172 (Miss. 1989). Here, the State presented three race-neutral explanations for the strike against Hawthorne. Not only does Griffin possess only one of those characteristics, Puckett rebuts only one of those explanations. He has not demonstrated that the reasons assigned were pretextual.

¶29. The prosecutor's explanation for the strike against Harvey Wesby was that Wesby's response to death penalty questions on voir dire was also inconsistent with his juror questionnaire. To the question "What is your opinion of the death penalty" on the questionnaire, Wesby responded, "It's okay." However, Wesby responded to none of the death penalty questions asked by the prosecutor during voir dire. Again, Puckett argues that the prosecutor's questions were confusing and that the jurors were not all given an opportunity to answer the questions. Such an assertion, however, is unsupported by the record. Though the prosecutor rephrased his questions several times pursuant to the objections of defense counsel and the court's request, the questions were ultimately made clear. The prosecutor asked if all the jurors understood the questions, and no juror responded in the negative. The jurors were all given the opportunity to answer the questions as clarified. As with the trial court's finding that the explanation for striking Hawthorne was not pretextual, it cannot be said that the trial court's finding that Wesby's response to the death penalty questions on voir dire

was inconsistent with the answer given on his questionnaire was clear error.

¶30. Puckett also asserts that the explanations offered for the strikes against Martha Bridges and Gloria Grayer were pretextual due to disparate treatment of similarly situated white jurors. Again, the prosecutor explained that the State struck Grayer because her brother was a victim of a shooting, and she did not want to know the outcome of the case. The State struck Bridges because of her request to be excused for medical problems. Puckett compares the State's explanation for the strike against Grayer and the State's failure to strike Lavern Moran, a white female whose mother-in-law was murdered. Puckett overlooks the fact that the State struck Grayer not solely because her brother was a victim of a shooting, but because she also expressed a lack of concern over what happened to her own brother's murderer. Moran expressed no such lack of concern.

¶31. Puckett compares the explanation for the strike against Bridges and the State's failure to strike Mary Ann Golbski, a white female who stated on her written questionnaire in response to the question "Is there any other information that you believe might be important for the Court or for the lawyers to know about you as a potential juror," "weight: 341 pounds." Bridges stated on her questionnaire, "Yes, I am sick with back and knee problems, cannot sit or stand a long time; try to work two or three days a week to survive, working by myself so my business would be closed; please excuse me." The prosecution attempted to strike Bridges for cause, arguing that her medical problems would render her inattentive. The strike for cause was overruled, and the prosecution exercised a peremptory strike against Bridges. Clearly, Bridges' response differs substantially from that of Golbski. Golbski in no way indicated that her weight would impede her serving on the jury or that she had any reservations about serving.

¶32. On remand, following the presentation of evidence and argument by both sides, the trial judge gathered all the exhibits and reviewed them in chambers. Following a brief recess, the judge reconvened the hearing and recited his review of the evidence and argument and his review of the three prong criteria under *Batson,* and stated his opinion based "on a review of the trial transcript and of my trial notes taken during the course of the trial, as well as the evidence produced in this evidentiary hearing today" and found no violation of *Batson*. He did not make an on-the-record, juror-by-juror review of the specific reasons why he found each peremptory challenge to be acceptable, which clearly would have been the better route to take. However, "where a trial judge fails to elucidate such a specific explanation for each race neutral reason given, we will not remand the case for that *Batson*-related purpose alone. This Court is fully capable of balancing the *Batson* factors in cases such as this one. Continued remand of such cases only wastes the trial court's limited resources and acts to further delay justice." *Gary v. State*, 760 So.2d 743, 748 (Miss. 2000). Also, no objection was made by defense counsel, nor was any request made for the judge to make an on-the-record, juror-by-juror finding at that point. This is a classic situation where the wisdom of the law requiring contemporaneous objection to be made is quite apparent. The failure of defense counsel to raise the issue at that point, when elaboration and more detailed information could easily have been provided by the trial judge, precludes another remand as requested. The law is well settled that failure to make a contemporaneous objection waives the right to subsequently raise the issue.

¶33. Beyond that procedural bar, we note that a motion for rehearing is to state with particularity the points of law or fact that the Court has allegedly overlooked or misapprehended. It is to identify specific errors of law or fact the opinion is thought to contain and is not to merely repeat arguments already considered. This Court has now twice considered Puckett's *Batson* argument, in depth. We find no merit to Puckett's claim of a violation of *Batson*.

<u>**CONCLUSION**</u>

¶34. Applying the deferential standard of review and after careful scrutiny of the record, this Court concludes that, though the trial judge erred in finding that Puckett failed to establish a prima facie case of discrimination, the trial judge correctly determined that the explanations offered by the State were race-neutral and that Puckett failed to demonstrate that the State's proffered reasons were pretextual. The record, both from the initial trial and from the ***Batson*** hearing, reflects that the trial judge participated attentively in the discourse regarding these challenged strikes. The trial judge specifically found that the State's peremptory challenges were not used in a racially discriminatory manner. The record buttresses the trial court's findings, and they should be given deference accordingly. In light of the deference accorded these factual findings, this Court holds that the judge acted well within his discretion in denying Puckett's ***Batson*** motion. Therefore, the judgment of the Forrest County Circuit Court is affirmed.

¶35. **CONVICTION OF CAPITAL MURDER AND SENTENCE OF DEATH AFFIRMED.**

 **MILLS, WALLER, COBB, DIAZ AND EASLEY, JJ., CONCUR. BANKS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, P.J. PITTMAN, P.J., NOT PARTICIPATING.**

 BANKS, PRESIDING JUSTICE, DISSENTING:

¶36. I respectfully disagree with the majority's conclusion that there has been no violation here of ***Batson v. Kentucky***, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). In my view, the trial court plainly erred in failing to find that there was a prima facie case of discrimination and subsequently erred in failing to conclude that reasons asserted were pretextual. Therefore, I would reverse the trial court's judgment and remand this case for a new trial.

¶37. First, I see no reason to rely upon the statistical probability testimony to find a prima facie case. We recognized long ago that using peremptory challenges to eliminate all or almost all black jurors is a sufficient prima facie case of a ***Batson*** violation. ***Conerly v. State***, 544 So. 2d 1370, 1372 (Miss. 1989)("[T]he fact that the prosecution used all of the peremptory strikes necessary (five) to remove all but one black person from the jury satisfies the requirement of raising an inference of racial discrimination."). Other jurisdictions have also noted that using challenges in this manner is a sufficient prima facie case. *See **Ex parte Floyd***, 571 So.2d 1234,1236 (Ala. 1990)(defendant made prima facie case showing that prosecutor used eleven peremptory challenges to remove all eleven blacks from jury); ***Reynolds v. State***, 576 So.2d 1300, 1301 (Fla . 1991)("By eliminating every member of the minority, a 'strong likelihood' is created that shifts the burden to the state to provide justification"). ***United States v. Cartlidge***, 808 F.2d 1064,1070 (5th Cir. 1987)(Prosecutor's challenges of four black jurors and one black alternate, resulting in a trial jury composed of eleven white and one black person evidenced racial discrimination in making out a prima facie case of purposeful discrimination.). To the extent that it suggests otherwise, the majority misspoke in ***Puckett I***. Moreover, given the fact that all black prospective jurors were eliminated, the trial court clearly erred in failing to find a prima facie case and that failing must color consideration of its findings with regard to the reasons proffered.

¶38. We must keep in mind that the reason offered may be fanciful, as long as it is race neutral. At a point, however, it should become obvious that certain reasons are pretextual, especially where there is a strong prima facie case. ***Mack v. State***, 650 So.2d 1289, 1297 (Miss. 1994). Gloria Hawthorne is a case in

point. The prosecutor suggested that he was concerned about Gloria Hawthorne's view of the death penalty where he was seeking the death penalty and that Hawthorne's response indicated that she was pro-death penalty. It is the rare prosecutor who exercises a peremptory strike in a capital case based on a view that the prospective juror is pro-death penalty. The suggestion that she slept on her days off as an additional reason for the exercise of the strike appears even more specious given the death penalty suggestion. With all deference to the trial court, I find his failure to find pretext in this instance clearly erroneous.

¶39. Furthermore, the trial court accepted the reasons given by the State for Harvey Wesby. Specifically, the State asserted that Wesby was "flippant" and unresponsive as the race neutral reasons for striking him. A close review of the record reveals otherwise. The questions asked by the State during voir dire did not require Wesby to say anything about the death penalty. Wesby stated in his questionnaire that he thought the death penalty was "okay." While succinct, such a response is not necessarily flippant. One could readily suppose that Wesby was not opposed to though not necessarily enthusiastic about, the death penalty. As to unresponsiveness, the prosecutor asked the prospective jurors to raise their hands if they had a firm belief in favor of the death penalty. Likewise he asked those who could not vote for the death penalty or were in between to raise their hands. Finally, he asked everyone if there was anyone that could not keep their opinion from interfering with their duty to deliberate. Wesby did not raise his hand to any of these questions. This does not make him unresponsive. Because of the way the State phrased the question, Wesby did not have to raise his hand, regardless of his opinion on the death penalty. His reaction to these questions is perfectly in keeping with his response to the questionnaire concerning his views. There were others who did not raise their hands to the questions who were empaneled on the jury: juror no. 2 Danny Griffin; juror no. 12, Steve Savarese; and juror no. 20, Lavern Moran. However, the record does not contain their responses to the death penalty questionnaire. In my view, the trial court erred in deeming Wesby's failure to raise his hand as a non-pretextual, race-neutral reason for the State's strike.

¶40. I also reject the majority's contention the Puckett suffers a procedural bar for the failure to "object" to a ruling made by the trial court. One need not object to a court's ruling. *Finley v. State*, 725 So.2d 226, 230-31 (Miss.1998); *see also Duplantis v. State*, 708 So.2d 1327, 1339-40 (Miss.1998). We dispensed with the necessity to take exception to a court's ruling decades ago. *Carmichael v. Agur Realty Co., Inc*., 574 So.2d 603, 613 (Miss. 1990). Nor is a defendant duty bound to request findings of fact with regard to peremptory challenges which have been contested. We have placed the independent duty of fact finding on the trial courts. *Johnson v. State*, 754 So. 2d 1178, 1180 (Miss. 2000); *Bounds v. State*, 688 So. 2d 1362, 1366 (Miss. 1997); *Hatten v. State*, 628 So. 2d 294, 298 (Miss. 1993). Indeed, as the majority notes, it is precisely for this reason that his case was remanded to that court in the first place. There is no procedural bar here.

¶41. Finally, I reject the majority's contention that the motion for rehearing is somehow deficient because it allegedly repeats arguments already made. First the motion for rehearing cites *Johnson* and *Bounds* which are not cited in the majority opinion nor distinguished in any way. Morever, to the extent that this Court continues to overlook the obvious merit of those arguments, a litigant may appropriately, in my view, continue to press them in order to give the Court an opportunity to cure its error.

¶42. For these reasons, I respectfully dissent.

**McRAE, P.J., JOINS THIS OPINION.**

## APPENDIX

# DEATH CASES AFFIRMED BY THIS COURT

*Goodin v. State,* --- So.2d --- (Miss. 2001).

*Eskridge v. State,* 765 So.2d 508 (Miss. 2000).

*McGilberry v. State,* 741 So. 2d 894 (Miss. 1999)*.*

*Puckett v. State,* 737 So. 2d 322 (Miss. 1999). *remanded for *Batson* hearing.

*Manning v. State,* 735 So. 2d 323 (Miss. 1999).

*Hughes v. State,* 735 So. 2d 238 (Miss. 1999).

*Turner v. State,* 732 So. 2d 937 (Miss. 1999).

*Smith v. State,* 729 So. 2d 1191 (Miss. 1998).

*Burns v. State,* 729 So. 2d 203 (Miss. 1998).

*Jordan v. State,* 728 So. 2d 1088 (Miss. 1998).

*Gray v. State,* 728 So. 2d 36 (Miss. 1998).

*Manning v. State,* 726 So. 2d 1152 (Miss. 1998).

*Woodward v. State,* 726 So. 2d 524 (Miss. 1997).

*Bell v. State,* 725 So. 2d 836 (Miss. 1998).

*Evans v. State,* 725 So. 2d 613 (Miss. 1997).

*Brewer v. State,* 725 So. 2d 106 (Miss. 1998).

*Crawford v. State,* 716 So. 2d 1028 (Miss. 1998).

*Doss v. State,* 709 So. 2d 369 (Miss. 1996).

*Underwood v. State,* 708 So. 2d 18 (Miss. 1998).

*Holland v. State,* 705 So. 2d 307 (Miss. 1997).

*Wells v. State,* 698 So. 2d 497 (Miss. 1997).

*Wilcher v. State,* 697 So. 2d 1123 (Miss. 1997).

*Wilcher v. State,* 697 So. 2d 1087 (Miss. 1997).

*Wiley v. State,* 691 So. 2d 959 (Miss. 1997).

*Brown v. State*, 690 So. 2d 276 (Miss. 1996). **DEATH CASES AFFIRMED BY THIS COURT**

*Simon v. State*, 688 So. 2d 791 (Miss.1997).

*Jackson v. State*, 684 So. 2d 1213 (Miss. 1996).

*Williams v. State,* 684 So. 2d 1179 (Miss. 1996).

*Davis v. State,* 684 So. 2d 643 (Miss. 1996).

*Taylor v. State*, 682 So. 2d. 359 (Miss. 1996).

*Brown v. State*, 682 So. 2d 340 (Miss. 1996).

*Blue v. State*, 674 So. 2d 1184 (Miss. 1996).

*Holly v. State*, 671 So. 2d 32 (Miss. 1996).

*Walker v. State*, 671 So. 2d 581(Miss. 1995).

*Russell v. State*, 670 So. 2d 816 (Miss. 1995).

*Ballenger v. State*, 667 So. 2d 1242 (Miss. 1995).

*Davis v. State*, 660 So. 2d 1228 (Miss. 1995).

*Carr v. State*, 655 So. 2d 824 (Miss. 1995).

*Mack v. State*, 650 So. 2d 1289 (Miss. 1994).

*Chase v. State*, 645 So. 2d 829 (Miss. 1994).

*Foster v. State*, 639 So. 2d 1263 (Miss. 1994).

*Conner v. State*, 632 So. 2d 1239 (Miss. 1993).

*Hansen v. State*, 592 So. 2d 114 (Miss. 1991).

***Shell v. State***, 554 So. 2d 887 (Miss. 1989), ***Shell v. Mississippi,*** 498 U.S. 1 (1990) reversing, in part, and remanding, ***Shell v. State***, 595 So. 2d 1323 (Miss. 1992) remanding for new sentencing hearing.

*Davis v. State*, 551 So. 2d 165 (Miss. 1989).

*Minnick v. State*, 551 So. 2d 77 (Miss. 1989).

## DEATH CASES AFFIRMED BY THIS COURT

### (continued)

***Pinkney v. State***, 538 So. 2d 329 (Miss. 1989), ***Pinkney v. Mississippi***, 494 U.S. 1075 (1990) vacating and remanding ***Pinkney v. State***, 602 So. 2d 1177 (Miss. 1992) remanding for new sentencing hearing.

*Clemons v. State*, 535 So. 2d 1354 (Miss. 1988), *Clemons v. Mississippi*, 494 U.S. 738 (1990) vacating and remanding, *Clemons v. State*, 593 So. 2d 1004 (Miss. 1992) remanding for new sentencing hearing.

*Woodward v. State*, 533 So. 2d 418 (Miss. 1988).

*Nixon v. State*, 533 So. 2d 1078 (Miss. 1987).

*Cole v. State*, 525 So. 2d 365 (Miss. 1987).

*Lockett v. State*, 517 So. 2d 1346 (Miss. 1987).

*Lockett v. State*, 517 So. 2d 1317 (Miss. 1987).

*Faraga v. State*, 514 So. 2d 295 (Miss. 1987).

*Jones v. State*, 517 So. 2d 1295 (Miss. 1987)*, Jones v. Mississippi*, 487 U.S. 1230 (1988) vacating and remanding, *Jones v. State*, 602 So. 2d 1170 (Miss. 1992) remanding for new sentencing hearing.

*Wiley v. State*, 484 So. 2d 339 (Miss. 1986).

*Johnson v. State*, 477 So. 2d 196 (Miss. 1985).

*Gray v. State*, 472 So. 2d 409 (Miss. 1985).

*Cabello v. State*, 471 So. 2d 332 (Miss. 1985).

*Jordan v. State*, 464 So. 2d 475 (Miss. 1985).

*Wilcher v. State*, 455 So. 2d 727 (Miss. 1984).

*Billiot v. State*, 454 So. 2d 445 (Miss. 1984).

*Stringer v. State*, 454 So. 2d 468 (Miss. 1984). **DEATH CASES AFFIRMED BY THIS COURT (continued)** *Dufour v. State*, 453 So. 2d 337 (Miss. 1984).

*Neal v. State*, 451 So. 2d 743 (Miss. 1984).

*Booker v. State*, 449 So. 2d 209 (Miss. 1984).

*Wilcher v. State*, 448 So. 2d 927 (Miss. 1984).

*Caldwell v. State*, 443 So. 2d 806 (Miss. 1983).

*Irving v. State*, 441 So. 2d 846 (Miss. 1983).

*Tokman v. State*, 435 So. 2d 664 (Miss. 1983).

*Leatherwood v. State*, 435 So. 2d 645 (Miss. 1983).

*Hill v. State*, 432 So. 2d 427 (Miss. 1983).

*Pruett v. State*, 431 So. 2d 1101 (Miss. 1983).

*Gilliard v. State*, 428 So. 2d 576 (Miss. 1983).

*Evans v. State*, 422 So. 2d 737 (Miss. 1982).

*King v. State*, 421 So. 2d 1009 (Miss. 1982).

*Wheat v. State*, 420 So. 2d 229 (Miss. 1982).

*Smith v. State*, 419 So. 2d 563 (Miss. 1982).

*Johnson v. State*, 416 So. 2d 383 (Miss.1982).

*Edwards v. State*, 413 So. 2d 1007 (Miss. 1982).

*Bullock v. State*, 391 So. 2d 601 (Miss. 1980).

*Reddix v. State*, 381 So. 2d 999 (Miss. 1980).

*Jones v. State*, 381 So. 2d 983 (Miss. 1980).

*Culberson v. State*, 379 So. 2d 499 (Miss. 1979).

*Gray v. State*, 375 So. 2d 994 (Miss. 1979).

*Jordan v. State*, 365 So. 2d 1198 (Miss. 1978).

*Voyles v. State*, 362 So. 2d 1236 (Miss. 1978). **DEATH CASES AFFIRMED BY THIS COURT**

**(continued)** *Irving v. State*, 361 So. 2d 1360 (Miss. 1978).

*Washington v. State*, 361 So. 2d 6l (Miss. 1978).

*Bell v. State*, 360 So. 2d 1206 (Miss. 1978).

\* Case was originally affirmed in this Court but on remand from U. S. Supreme Court, case was remanded by this Court for a new sentencing hearing.

## DEATH CASES REVERSED AS TO GUILT PHASE

### AND SENTENCE PHASE

*Flowers v. State,* 773 So.2d 309 (Miss. 2000).

*Edwards v. State,* 737 So. 2d 275 (Miss. 1999).

*Smith v. State,* 733 So. 2d 793 (Miss. 1999).

*Porter v. State,* 732 So.2d 899 (Miss. 1999).

*Kolberg v. State,* 704 So. 2d 1307 (Miss. 1997).

*Snelson v. State,* 704 So. 2d 452 (Miss. 1997).

*Fusilier v. State,* 702 So. 2d 388 (Miss. 1997).

*Howard v. State,* 701 So. 2d 274 (Miss. 1997).

*Lester v. State,* 692 So. 2d 755 (Miss. 1997).

*Hunter v. State,* 684 So. 2d 625 (Miss. 1996).

*Lanier v. State,* 684 So. 2d 93 (Miss. 1996).

*Giles v. State,* 650 So. 2d 846 (Miss. 1995).

*Duplantis v. State,* 644 So. 2d 1235 (Miss. 1994).

*Harrison v. State,* 635 So. 2d 894 (Miss. 1994).

*Butler v. State,* 608 So. 2d 314 (Miss. 1992).

*Jenkins v. State,* 607 So. 2d 1171 (Miss. 1992).

*Abram v. State,* 606 So. 2d 1015 (Miss. 1992).

*Balfour v. State,* 598 So. 2d 731 (Miss. 1992).

*Griffin v. State,* 557 So. 2d 542 (Miss. 1990).

*Bevill v. State,* 556 So. 2d 699 (Miss. 1990).

*West v. State,* 553 So. 2d 8 (Miss. 1989).

*Leatherwood v. State,* 548 So. 2d 389 (Miss. 1989).

*Mease v. State,* 539 So. 2d 1324 (Miss. 1989).

*Houston v. State,* 531 So. 2d 598 (Miss. 1988).

## DEATH CASES REVERSED AS TO GUILT PHASE

### AND SENTENCE PHASE

#### (continued)

*West v. State,* 519 So. 2d 418 (Miss. 1988).

*Davis v. State,* 512 So. 2d 129l (Miss. 1987).

*Williamson v. State,* 512 So. 2d 868 (Miss. 1987).

*Foster v. State,* 508 So. 2d 1111 (Miss. 1987).

*Smith v. State*, 499 So. 2d 750 (Miss. 1986).

*West v. State*, 485 So. 2d 681 (Miss. 1985).

*Fisher v. State*, 481 So. 2d 203 (Miss. 1985).

*Johnson v. State*, 476 So. 2d 1195 (Miss. 1985).

*Fuselier v. State*, 468 So. 2d 45 (Miss. 1985).

*West v. State*, 463 So. 2d 1048 (Miss. 1985).

*Jones v. State*, 461 So. 2d 686 (Miss. 1984).

*Moffett v. State*, 456 So. 2d 714 (Miss. 1984).

*Lanier v. State*, 450 So. 2d 69 (Miss. 1984).

*Laney v. State*, 421 So. 2d 1216 (Miss. 1982).

### DEATH CASES REVERSED

### AS TO PUNISHMENT AND REMANDED

### <u>FOR RESENTENCING TO LIFE IMPRISONMENT</u>

*Reddix v. State*, 547 So. 2d 792 (Miss. 1989).

*Wheeler v. State*, 536 So. 2d 1341 (Miss. 1988).

*White v. State*, 532 So. 2d 1207 (Miss. 1988).

*Bullock v. State*, 525 So. 2d 764 (Miss. 1987).

*Edwards v. State*, 441 So. 2d 84 (Miss. l983).

*Dycus v. State*, 440 So. 2d 246 (Miss. 1983).

*Coleman v. State*, 378 So. 2d 640 (Miss. 1979).

### DEATH CASES REVERSED AS TO

### PUNISHMENT AND REMANDED FOR A NEW TRIAL

### <u>ON SENTENCING PHASE ONLY</u>

*King v. State,* --- So.2d --- (Miss. 2001).

*Walker v. State,* 740 So.2d 873 (Miss. 1999).

*Watts v. State,* 733 So.2d 214 (Miss. 1999).

*West v. State,* 725 So. 2d 872 (Miss. 1998).

*Smith v. State*, 724 So. 2d 280 (Miss. 1998).

*Berry v. State,* 703 So. 2d 269 (Miss. 1997).

*Booker v. State*, 699 So. 2d 132 (Miss. 1997).

*Taylor v. State*, 672 So. 2d 1246 (Miss. 1996).

***Shell v. State***, 554 So. 2d 887 (Miss. 1989), ***Shell v. Mississippi***, 498 U.S. 1 (1990) reversing, in part, and remanding, ***Shell v. State*** 595 So. 2d 1323 (Miss. 1992) remanding for new sentencing hearing.

*****Pinkney v. State***, 538 So. 2d 329 (Miss. 1989), ***Pinkney v. Mississippi,*** 494 U.S. 1075 (1990) vacating and remanding, ***Pinkney v. State***, 602 So. 2d 1177 (Miss. 1992) remanding for new sentencing hearing.

***Clemons v. State***, 535 So. 2d 1354 (Miss. 1988), ***Clemons v. Mississippi***, 494 U.S. 738 (1990) vacating and remanding, ***Clemons v. State***, 593 So. 2d 1004 (Miss. 1992) remanding for new sentencing hearing.

***Jones v. State***, 517 So. 2d 1295 (Miss. 1987), ***Jones v. Mississippi,*** 487 U.S. 1230 (1988) vacating and remanding, ***Jones v. State***, 602 So. 2d 1170 (Miss. 1992) remanding for new sentencing hearing.

*Russell v. State*, 607 So. 2d 1107 (Miss. 1992).

*Holland v. State*, 587 So. 2d 848 (Miss. 1991).

*Willie v. State*, 585 So. 2d 660 (Miss. 1991).

*Ladner v. State*, 584 So. 2d 743 (Miss. 1991).

*Mackbee v. State*, 575 So. 2d 16 (Miss. 1990). **DEATH CASES REVERSED AS TO**

**PUNISHMENT AND REMANDED FOR A NEW TRIAL**

**ON SENTENCING PHASE ONLY**

**(continued)**

*Berry v. State*, 575 So. 2d 1 (Miss. 1990).

*Turner v. State*, 573 So. 2d 657 (Miss. 1990).

*State v. Tokman*, 564 So. 2d 1339 (Miss. 1990).

*Johnson v. State*, 547 So. 2d 59 (Miss. 1989).

*Williams v. State*, 544 So. 2d 782 (Miss. 1989); *sentence aff'd* 684 So. 2d 1179 (1996).

*Lanier v. State*, 533 So. 2d 473 (Miss. 1988).

*Stringer v. State*, 500 So. 2d 928 (Miss. 1986).

*Pinkton v. State*, 481 So. 2d 306 (Miss. 1985).

*Mhoon v. State*, 464 So. 2d 77 (Miss. 1985).

*Cannaday v. State*, 455 So. 2d 713 (Miss. 1984).

*Wiley v. State*, 449 So. 2d 756 (Miss. 1984); resentencing affirmed, *Wiley v. State*, 484 So. 2d 339 (Miss. 1986), *cert. denied, Wiley v. Mississippi*, 479 U.S. 1036 (1988); resentencing ordered, *Wiley v. State*, 635 So. 2d 802 (Miss. 1993) following writ of habeas corpus issued pursuant to *Wiley v. Puckett*, 969 So. 2d 86, 105-106 (5th Cir. 1992); resentencing affirmed, *Wiley v. State*, 95-DP-00149, February 13, 1997 (rehearing pending).

*Williams v. State*, 445 So. 2d 798 (Miss. 1984).

* Case was originally affirmed in this Court but on remand from U. S. Supreme Court, case was remanded by this Court for a new sentencing hearing.